519 A.2d 769

**Elmer Donald NASH**

v.

**STATE of Maryland.**

**No. 474, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 12, 1987.

682

Clarence W. Sharp, Assigned Public Defender, Annapolis (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty. for Harford County and Elizabeth B. Hegeman, Asst. State's Atty. for Harford County, Bel Air, on the brief), for appellee.

Submitted before GARRITY, ROBERT M. BELL and WENNER, JJ.

GARRITY, Judge.

Elmer Donald Nash, the appellant, was charged in an indictment in the Circuit Court for Harford County with two

counts of child abuse and two counts of third degree sexual offense (a fifth count of fourth degree sexual offense was *nol prossed* prior to trial). Two counts, child abuse and third degree sexual offense, involved Paula P. and two, charging the same offenses, involved her older sister Michelle.[1]

Trial on the charges involving Michelle was held before a jury in the Circuit Court for Harford County (Cameron, J. presiding). The appellant was found guilty on both counts of child abuse and third degree sexual offense. He was sentenced to imprisonment for seven years for child abuse and two years, consecutive, for third degree sexual offense.

We are asked to determine whether the lower court abused its discretion in: i) denying the appellant's motion for recusal; ii) permitting the State to ask leading questions of Paula; iii) limiting defense counsel in his cross-examination of Joyce S.; and iv) admitting the testimony of Ms. Bloxham. We are further asked to determine whether the lower court erred at sentencing in allowing the appellant credit only for time served while awaiting trial on the severed charge.

### Facts

Michelle, who was born December 10, 1969, testified that she was ten years old when the appellant came to live with her mother, Betty; her younger sister, Paula; and her older stepsister, Joyce, at the Edgewater Village Apartments in Harford County. The day after Christmas of 1982, they moved to a large old home on Wheel Road that was in a state of disrepair and were forced to live, sleep, and bathe in the dining room until the house was renovated in the early spring of 1983. In the summer of that year, Mi-

---

**1.** The charges involving the two victims were severed for trial. On July 5, 1985, the appellant was convicted of the charges involving Paula and sentenced to a total of nine years. That judgment was affirmed by this court in *Nash v. State,* No. 886, September Term, 1985 (per *curiam* opinion filed March 3, 1986), *cert. denied,* 307 Md. 84, 512 A.2d 377 (1986).

chelle's mother began work on the night shift at a shoe factory. While her mother was at work or still asleep in the morning, the appellant took care of Michelle and Paula and got them up and off to school.

Michelle recalled that when the group lived at the Edgewater apartment, the appellant exposed himself on three or four occasions as they sat on the floor playing cards and that whenever her mother would come into the room, the appellant would throw a pillow between his legs. Shortly after they moved into the Wheel Road home, Michelle stated that the appellant began fondling her breasts as well as her vaginal area. She further testified that the appellant had made demands on her to touch him as well. Although Michelle complained to her mother, upon the appellant's denial she was punished by her mother. Indeed, Michelle recalled numerous times when her mother would hit her or send her to bed without supper because the appellant would tell her mother that chores were not done, or were done improperly, any time Michelle refused to let him fondle her, or refused to fondle him.

On October 26, 1984, Michelle related these facts to Ms. Annetta Bloxham, a protective service worker involved in the investigation of neglect and abuse referrals of the Harford County Department of Social Services. Michelle has lived with her father in Pennsylvania since the day she advised Ms. Bloxham of the appellant's conduct.

Paula, Michelle's younger sister, and Joyce, Michelle's older stepsister, also testified regarding various incidents they observed between the appellant and Michelle. Michelle's father testified that he contacted the Harford County Social Services by telephone on October 26, 1984, after receiving a letter on that day from Joyce.

In addition to presenting character witnesses, the appellant categorically denied ever touching Michelle in any way or requesting that she fondle him.

## I. *Denial of Recusal*

The appellant does not dispute that trial judges are vested with discretion to determine whether to recuse themselves, and that in order to obtain a reversal of a refusal to do so, there must be an affirmative showing of bias or prejudice on the part of the trial judge. *See Harper v. Harper,* 49 Md.App. 339, 431 A.2d 761 (1981), *modified on other grounds,* 294 Md. 54, 448 A.2d 916 (1982). Although the appellant agrees that he did not make an affirmative showing of bias or prejudice in this area, he nevertheless contends that the court committed reversible error in refusing to recuse itself.

The basis for the recusal request was the fact that the trial judge had presided at the appellant's previous trial, at which he was accused of committing similar offenses against the sister of the victim in the case *sub judice.*

■ It is well settled that a judge's previous participation in an earlier, related trial, is "beside the point" where the judge is not acting as the fact finder in the present case, but rather is simply presiding over its presentation to the jury. *Mason v. State,* 12 Md.App. 655, 683, 280 A.2d 753, *cert. denied,* 263 Md. 727 (1971). *See also McFadden v. State,* 42 Md.App. 720, 402 A.2d 1310 (1979); *Silbert v. State,* 12 Md.App. 516, 280 A.2d 55, *cert. denied,* 263 Md. 720 (1971). Indeed, even where the judge is to be the fact finder, there is no *per se* rule requiring recusal. *Carey v. State,* 43 Md.App. 246, 405 A.2d 293, *cert. denied,* 286 Md. 744 (1979), 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 244 (1980).

■ The recusal motion was specifically based on the trial court's knowledge that appellant had a prior record; the court's refusal to merge charges at the previous trial; and the court's imposition of a consecutive sentence. Under the facts and circumstances of this case, we are unable to conclude that the court abused its discretion in denying the motion for recusal.

## II.  *Evidentiary Rulings*

### A.  *Leading Questions*

■  On occasion, the prosecutor asked Paula, who was 13 years-of-age at the time of the trial, "was there ever a time that …" or "did there come a time when …" Defense counsel objected to questions prefaced in this manner on the ground that they impermissibly led the witness.  The following colloquy took place at the bench.

DEFENSE COUNSEL: This girl to my knowledge, is 13 years of age at the present time.  She appears to be a mature individual.  She's been through one proceeding at the trial of her case against the defendant.

She indicated at that time on the cross-examination, I believe, she had reviewed this matter the last two or three times with the State's Attorney.  I don't feel there's any reason or justification for the leading nature of these questions.

In the case the Court doesn't understand my objection, I don't think it takes anyone with a great deal of legal experience to understand by saying the preliminary words, did there come a time, when it's going to be immediately followed by what they want their witness to recall, and I just think it's completely unfair under the circumstances.  She's obviously setting forth in the witness's mind exactly what she wants her to say without the necessity of the witness saying it. . . .

While at the bench, the prosecutor pointed out that she could not ask general questions, such as "What happened on a particular day?," because no specific date for these alleged incidents was known.  The court overruled defense counsel's objection by referring to the witness's young age and observing that "[t]here are problems in this particular setting."  The trial judge further noted:

In addition, we have a series of episodes.  It's not just one stickup or one B and E or something, it's kind of continuous, and there has to be some way to focus on a particular occasion.  Here we do not have witnesses to

say what happened on the night of the 31st because these things happened sometime in the past. Nobody knows the date.

It is elementary that leading questions on direct examination should be avoided. 3 J. Wigmore, Evidence § 769 (Chadbourn rev. 1970). There are, however, times when latitude may be allowed in posing questions during the direct examination of a particular witness. As this court held in *Culver v. State,* 1 Md.App. 406, 412, 230 A.2d 361 (1967):

> [L]eading questions are permissible to arrive at facts when modesty or delicacy prevents full answers to general interrogations ..., [i.e.,] ... inquiry into delicate subjects of a sexual nature, constitute an exception to the general rule against leading questions. In such cases, the permitting of leading questions of the prosecutrix, particularly if she is of tender years, is a matter of sound discretion of the trial court.

The discretion of the trial judge will not be overturned on appeal unless "there has been such an abuse of his discretion as to prejudice the rights of the accused to a fair trial." *Hubbard v. State,* 2 Md.App. 364, 368, 234 A.2d 775 (1967), *cert. denied,* 249 Md. 732, 393 U.S. 889, 89 S.Ct. 208, 21 L.Ed.2d 168 (1968).

In *Scott v. United States,* 412 A.2d 364 (D.C.1980), a matter similar to the case *sub judice* wherein the complaining witness was 13 years-of-age, the Court observed:

> While it is often necessary to use leading questions in a case of a young witness, age is not determinative. The legitimate need for such questions must be balanced against the danger they will supply the witness with a false memory. *United States v. McGovern,* 499 F.2d 1140, 1142, (1st Cir.1974). Since the trial court is in the best position to observe the witness and make this determination, it is largely committed to the trial court's dis-

cretion and we adhere to that policy here. *United States v. Durham,* 319 F.2d 590 (4th Cir.1963).

*Id.* at 371.

We adhere to the rationale articulated in *Scott* and conclude that the trial court did not abuse its discretion in permitting the State to ask leading questions during its direct examination of Paula.

### B. *Limited Cross-Examination*

■ The appellant asseverates that defense counsel was improperly precluded from examining Paula regarding the existence of problems between her stepsister, Joyce, and the appellant. The defense theory was that Joyce had instigated false accusations out of a sense of vindictiveness towards the appellant.

On cross-examination, Paula denied that either her mother or the appellant had "thrown" her stepsister out of the house. Defense counsel then asked questions designed to imply that Joyce left the home on Wheel Road because she had become upset with certain dating rules which had been imposed on her by her mother and the appellant. The State objected to this line of questioning and in a bench conference advised that Joyce's role in the matter had been that of a "whistleblower," and that, in fact, Joyce had left the home because she too had been a victim of appellant's behavior.

The court sustained the State's objection and noted that such line of questioning had the potential to prejudice the appellant if it were revealed that he had been previously convicted, based on similar facts, of having committed child abuse and third degree sexual offense against the witness, Paula.

Although the cross-examination of Paula was relevant as to appellant's theory regarding Joyce's motivation, we believe that under the circumstances of preventing actual prejudice to the appellant, the trial judge properly limited cross-examination. Furthermore, since Michelle had already testified on cross-examination that Joyce had been unhappy with certain house rules, Paula's testimony on this

same subject would have been cumulative and therefore properly excludable even though relevant. *Drug Fair v. Smith,* 263 Md. 341, 283 A.2d 392 (1971).

## C. *State of Mind Exception*

■ Prior to the examination of Ms. Bloxham, a Harford County Department of Social Services worker, the prosecutor represented that she wished to ask what action Ms. Bloxham took on October 26, 1984, how the victim appeared to her on that date, and agreed to limit her testimony to the events of October 26th. The court allowed the examination on the grounds that it was relevant to refute the appellant's claim that the charges had been fabricated by the children and to show Michelle's reaction when she first realized that the situation had come to the attention of authorities.

Ms. Bloxham testified that she became involved in the investigation after receiving a telephone call on October 26, 1984. She stated that she went to Michelle's school, asked to speak with Michelle, and noted that Michelle appeared very surprised and frightened that she (Ms. Bloxham) had knowledge of the situation. Finally, Ms. Bloxham testified that she reassured Michelle that Michelle would not have to go home to her mother's, and made arrangements for temporary custody, placing Michelle with a relative.

The appellant contends that Ms. Bloxham's testimony was merely based on the hearsay statements made to her by the victim and therefore were irrelevant and improper. We disagree.

Declarations of a person whose state of mind is at issue are often a "primary source of evidence on this matter." C. McCormick, *Law of Evidence* § 294 (3d ed. 1984). As we held in *Santoni v. Moodie,* 53 Md.App. 129, 452 A.2d 1223 (1982), "such declarations are admissible to prove a material state of mind." *Id.* at 150, 452 A.2d 1223. To be reliable, the statement "must purport to relate to a condition of mind or emotion existing at the time of the statement and must have been made under circumstances indicating apparent

sincerity." *Id.* at 147, 452 A.2d 1223 (quoting C. McCormick, *Law of Evidence* § 324 (3d ed. 1984).

Ms. Bloxham had personal knowledge of Michelle's fear. The evidence that Michelle became frightened when she learned that the incidents between herself and the appellant were under investigation was relevant to explain her unwillingness to report them herself. *See Galusca v. Dodd*, 189 Md. 666, 669, 57 A.2d 313 (1948) (police officer's ability to testify that plaintiff was in a very nervous condition). We hold that the lower court did not abuse its discretion in allowing Ms. Bloxham to testify as to Michelle's reaction when confronted with circumstances presented herein.

### III. *Imposition of Sentence*

#### A. *Nature of Sentence*

■ The appellant first contends that his second sentence of nine years is to be treated as concurrent with his first sentence of nine years.

The transcript reveals that the following occurred during the sentencing imposed by the lower court after the appellant's second trial which ended in November, 1985:

THE COURT: All right, are you ready to be sentenced?

MR. NASH: Yes sir.

THE COURT: All right, on the first count, child abuse, I'm sentencing you to the Division of Corrections for a period of seven years.

MR. NASH: Beg your pardon sir?

THE COURT: Seven years for the second count. For the third count, third degree sexual offense, I'm going to sentence you to the Division of Corrections for two years consecutive to the first count so making a total of nine years beginning today. There will be jail credit applied to the previous case, but not to this one. There is some overlapping.

Although the sentences here were imposed under separate counts of the same indictment, they were, in fact,

imposed in two separate trials. The result mandated by these facts is clear:

> When a sentence of imprisonment is imposed on a defendant who is already subject to another sentence— imposed in the same state, a different state, or by federal court—it is for the sentencing judge to determine in his discretion whether the present sentence is to run concurrently with or consecutively to the prior sentence; and, if the sentencing judge fails to state how the sentence is to run, it is deemed to run concurrently. (citations omitted).

4 Wharton, *Criminal Procedure* § 629 (12th ed. 1976).

The trial court did not specify that the sentence being imposed for this offense be consecutive to the sentence the appellant was serving for the offense against the victim's sister. The failure to specify whether a sentence imposed is to be served concurrently or consecutively requires that the sentences be treated as concurrent. *Nelson v. State*, 66 Md.App. 304, 503 A.2d 1357 (1986).

### B. *Credit for Time in Custody*

■ When imposing sentence, the trial judge declared that "there will be a jail credit applied to the previous case, but not to this one." The appellant contends that Md. Code Ann. art. 27, § 638C(a) requires that he be given credit for all time spent in custody as a result of the charge for which the sentence is imposed.

The statute reads in pertinent part:

Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time spent in the custody of any state, county or city jail, correctional institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based, and the term of a definite or life sentence or the minimum and maximum terms of an indeterminate sentence shall be diminished thereby.... In all other cases, the sentencing court shall

have the discretion to apply credit against a sentence for time spent in custody for another charge or offense. This section does not apply to a parolee who is returned to the custody of the Division of Correction as a result of a subsequent offense and is incarcerated prior to the date on which he is sentenced for the subsequent offense.

The Court of Appeals recently construed § 638C(a) in *Fleeger v. State,* 301 Md. 155, 482 A.2d 490 (1984). As the Court stated in *Fleeger:* "The first sentence of subsection (a) deals with those situations where a defendant is in custody before trial and is subsequently convicted on the charge for which he was held." *Id.* at 160, 482 A.2d 490. Here, the appellant was charged in a single indictment with two counts of child abuse and two counts of third degree sexual offense. Two counts, child abuse and third degree sexual offense, involved Paula, and two, charging the same offenses, involved Paula's older sister, Michelle.

We believe that the appellant's situation is within the scope of the first sentence of subsection (a). The appellant was in custody before trial and was then convicted on the charge for which he was being held. "Under this provision, time spent in custody prior to the imposition of sentence must be credited against the sentence imposed." *Id.* at 160, 482 A.2d 490. We hold, therefore, that when imposing sentence, the court must give credit for all time spent in custody as a result of the charge for which the sentence is imposed rather than allow such credit to apply only to the sentence of a severed count in the indictment.

CONVICTIONS AFFIRMED. SENTENCES VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR IMPOSITION OF A NEW SENTENCE IN ACCORDANCE WITH THIS OPINION; TWO-THIRDS OF COSTS TO BE PAID BY APPELLANT; ONE-THIRD OF COSTS TO BE PAID BY HARFORD COUNTY.