998 A.2d 361

**Harry Boston PALMER**

v.

**STATE of Maryland.**

**Nos. 1408, Sept. Term, 2008, 2427, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 5, 2010.

Matthew H. Fogelson (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Sarah P. Pritzlaff (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH and MATRICCIANI, JJ.

MATRICCIANI, J.

On December 19, 1980, appellant, Harry Boston Palmer, was sentenced to incarceration for multiple crimes of violence. In 2008, appellant moved to recalculate his sentences, and the Circuit Court for Howard County called for a status conference on July 24, 2008. The court denied appellant's motion and subsequently issued an amended order of commitment. Appellant moved to correct the amended order as an illegal sentence, which motion was heard and denied on August 13, 2008. Appellant appealed that ruling on August 13, 2008, as Number 1408 of September Term, 2008. Appellant filed a second motion to correct the amended order as an illegal

sentence on December 14, 2009. This motion was denied without a hearing on December 28, 2009, and appellant appealed that ruling on December 30, 2009, as Number 2427 of September Term, 2009.

## QUESTION PRESENTED

Appellant presents one question for our review, which we have edited, for clarity:

I.   Did the trial court err when it denied appellant's motions to correct an illegal sentence?

For the reasons set forth below, we answer no and affirm the ruling of the Circuit Court for Howard County.

## FACTS AND PROCEEDINGS

On April 8, 1980, appellant was riding in a stolen vehicle when it attempted to pass an unmarked Maryland State Police vehicle illegally. The trooper gave chase and appellant fired at him with a shotgun stolen from the "Gun Smith on Wheels" of Laurel, Maryland. At the time of his arrest, appellant had charges pending against him in several jurisdictions for various crimes, including armed robbery and burglary.

Appellant was charged with ten criminal counts, all listed in the "CHARGES" section of the trial court's docket sheet, as follows:

(1) Assault W/i Murder (2) Attempt Murder (3) Assault by Shooting (4) Assault (5) Battery (6) Mal. Destr. (7) Assault W/i Murd. (8) Assault by Shooting (9) Assault (10) Mal. Destr.

The "TRIAL" section of the docket sheet indicates that a jury found appellant guilty of all counts on September 11, 1980. In that same section, a paragraph entitled "JUDG-MENT AND SENTENCE" summarizes appellant's sentences:

(C) Cts. 1 30 yrs. 2 Merge 3 10 yrs. 4 Merge 5 Merge 6 3 yrs. 7 30 yrs. 8 10 yrs. 9 Merge 10 3 yrs.

The sentences were imposed with the following "Special Conditions:"

Count 3 is consecutive to count 1, Count 6 is concurrent to count 3, Count 7 is concurrent to count 6, Count 8 is consecutive to count 7, count 10 is concurrent to count 8. Credit from time served.

Appellant's commitment record, dated December 19th, 1980, reflects the same sentences and conditions:

Commencing on December 19, 1980 for a period of 30 years as to count 1; count 2 merges; 10 years to count 3, consecutive [sic] to count 1; counts 4 & 5 merge; 3 years to count 6, concurrent to count 3; count 7–30 years, concurrent to count 6, 10 years to count 8, consecutive to count 7; count 9 merges; 3 years to count 10 concurrent to count 8; with credit for time served.

Taking these terms at face value and assuming that all the sentences would be carried out, appellant faced as many as seventy years in confinement for the crimes in this case.[1]

As a routine part of the incarceration process, the Maryland Department of Public Safety and Correctional Services, Division of Parole and Probation ("DPP"), prepared a "Pre–Sentence Investigation" report ("PSI"). The report, dated November 12, 1980, recited appellant's convicted counts and sentences almost exactly as they appear on the docket sheet.[2]

---

1. The chronology is more easily understood when presented graphically:

Nevertheless, the PSI sewed the seeds of this case when its author concluded that appellant "received a total of 40 years with credit for 225 days served."

Employees and agents of DPP, the Division of Correction ("DOC"), and the Maryland Parole Commission ("MPC") repeated the PSI's error, describing appellant's maximum incarceration as forty years rather than seventy.[3] Appellant's "Inmate Institutional Progress Sheet" from the DOC contains an entry, dated "12/24/1980," the context of which is not altogether clear but indicates that appellant was sentenced to "40 years from 4/8/80." There are also at least six "Parole Recommendation/Decison" reports from the MPC, dating from 1991 to 2008, as well as an "Order for Release on Parole" from 1998, all of which indicate that appellant was sentenced to forty years, beginning in 1980 and ending in 2020.[4]

In the meantime, appellant pursued the usual array of post-conviction judiciary processes. The circuit court heard appel-

Count 1 (30 years)
|-----------------------------|

Count 3 (10 years, consecutive to 1)
|----------|

Count 6 (3 years, concurrent with 3)
|---|

Count 7 (30 years, concurrent with 6)
|----------------------------|

Count 8 (10 years, consecutive to 7)
|----------|

Count 10 (3 years, concurrent with 8)
|---|

2. The report incorrectly lists count six as consecutive, rather than concurrent, to count three, which would have extended appellant's total imprisonment by a matter of ten years. This mistake, however, was overshadowed by the report's incorrect summary.

3. This is not surprising, as we might expect a reader simply to refer to the summary rather than recalculate the total time from the list of individual counts above it.

4. Appellant also produced a commitment record from a separate conviction on March 31, 1981, reflecting that appellant was sentenced to "15 years to run concurrent with sentence of *53 years* imposed by Howard County Court" (emphasis added).

lant's application for review of sentence on January 16, 1981, and denied it on March 16, 1981. The court heard and denied appellant's motion for reconsideration on April 21, 1981. The court twice denied post-conviction relief, first on March 9, 1981, and again in 1987.

In 1995, most of the judicial record from this case was destroyed pursuant to the Fifth Judicial Circuit's records retention and disposal schedule in effect at that time.[5] No transcript or notes from the sentencing hearing remain.

On August 27, 2004, the court heard and denied appellant's second motion for reconsideration. At that proceeding, appellant stated that his original sentence had been "40 years back in April of 1980." The court noted that although most of the record had been destroyed, what was left of it revealed that the court had previously denied a motion for reconsideration, depriving the court of jurisdiction over the motion before it.

During a routine audit in 2008, the DOC discovered the aforementioned discrepancy and wrote to the circuit court, asking it to clarify the matter and issue an amended order of commitment. On July 24, 2008, appellant appeared before the court for a "status conference," where he moved to recalculate his sentences. The court determined that appellant's total confinement stood at seventy years, denied appellant's motion, and issued an amended order of commitment to clarify the record.

Appellant filed a motion to correct an illegal sentence, arguing that the court's amended order of commitment from July 24, 2008, constituted an illegal increase in one or more of his sentences.[6] The court heard and denied this motion on

---

5. Some documents from this case were marked with the label "Do Not Destroy." According to a letter from the court to appellant, the court no longer disposes of files involving murder and first-degree rape, and appellant's file was marked as such by mistake.

6. Although the bulk of appellant's arguments address only count seven, it is not clear whether his motions and this appeal refer only to that sentence or to multiple sentences. Our reasoning applies to all of

August 13, 2008. Appellant filed a second, similar motion on December 14, 2009, which the court denied without a hearing on December 28, 2009. Appellant now seeks our review of these rulings in this consolidated appeal.

## DISCUSSION

Appellant argues that the sentences handed down on December 19, 1980 imposed a maximum incarceration of forty years and that the amended order of commitment that issued after the July 24, 2008 status conference illegally increased his sentences to seventy years, violating Maryland Rule 4–345(e)(1). *See State v. Sayre,* 314 Md. 559, 562, 552 A.2d 553 (1989). First, appellant contends that the sentences are inherently ambiguous as pronounced by the trial court. Second, appellant contends that the various records from the Maryland Department of Public Safety and Correctional Services make his sentence ambiguous. In either case, appellant argues the rule of lenity requires that we resolve the ambiguity in his favor, so that his sentences imposed at most forty years of incarceration. *See Scott v. State,* 379 Md. 170, 187, 840 A.2d 715 (2004) (holding that the rule of lenity applies to ambiguous pronouncements). We review the trial court's ruling and amended order of commitment *de novo. See Cox v. State,* 397 Md. 200, 211, 916 A.2d 311 (2007).

Appellant first argues that the pronounced sentences are ambiguous because of the way they are worded. The trial court found that, according to the plain language of the sentencing as evidenced by the docket sheet, count seven was concurrent with count six, which was concurrent with count three, which was consecutive to count one. Therefore, the court reasoned that count seven was "consecutive" to count one.

Citing our decisions in *Gatewood v. State,* 158 Md.App. 458, 857 A.2d 590 (2004) and *Nelson v. State,* 66 Md.App. 304, 503

appellant's sentences, however, and so we do not need to distinguish them for purposes of this appeal.

A.2d 1357 (1986), appellant argues that "because Count 7 was not explicitly made consecutive to Count 1 it ran concurrently with that count." Specifically, appellant argues: "The word 'consecutive' is not used with regard to Count 7. Thus under *Gatewood* and *Nelson* Count 7 cannot [sic] deemed to be consecutive to Count 1." Essentially, appellant argues that there is no "transitive property" of consecutive sentences,[7] so that although count seven appears to be consecutive to count one by way of its relations to "intermediate" sentences, those relations are ambiguous. Therefore, appellant concludes that the rule of lenity demands that we ignore the intermediate sentences and consider count seven as concurrent with count one. For the reasons that follow, we disagree with this proposition.

Appellant misconstrues the holdings in two of our decisions when he argues that, as a general matter: "If during a criminal sentencing, a judge does not explicitly make one sentence consecutive to another, the sentences are deemed to be running concurrently." There are several cases in which the court pronounced a sentence without explicitly making it consecutive to another one of the sentences and the sentences were deemed concurrent with one another. *See Gatewood,* 158 Md.App. at 480, 482, 857 A.2d 590; *Nash v. State,* 69 Md.App. 681, 519 A.2d 769 (1987); *Nelson v. State,* 66 Md. App. 304, 310, 503 A.2d 1357 (1986). That, however, does not form the rule, because those cases turned on the fact that their pronouncements failed to specify how the sentence in question related to *any other sentence, at all.*

---

7. "Transitivity" is a logical concept, learned by most students in elementary mathematics—and often quickly forgotten—that allows us to "string" certain relationships together. If a relation between things (be they numbers, sentences, or what have you) is transitive, then if one thing is related to a second thing, and that second thing is similarly related to a third thing, then the first and the third things are related in the same way. The relationship "is greater than" is perhaps the simplest example. It is transitive because if $x$ is greater than $y$ and $y$ is greater than $z$, then $x$ is greater than $z$. Here, the question is whether sentence $x$ being consecutive to $y$, and $y$ consecutive to $z$, implies that $x$ is consecutive to $z$, as well.

In *Gatewood,* the sentencing court stated only: "As to the conviction for distribution of cocaine on May 14, 2002, the sentence is twenty years, but that sentence is suspended." 158 Md.App. at 480, 857 A.2d 590. In *Nash,* the trial court was also silent on the issue and merely pronounced that the defendant would serve "Seven years for the second count." 69 Md.App. at 681, 691, 519 A.2d 769. In *Nelson,* we held that the sentencing court's "failure to designate whether [the sentences] were to be served concurrently or consecutively, rendered them concurrent." 66 Md.App. at 312–13, 503 A.2d 1357. With no chronological guidance whatsoever, the rule of lenity required that we construe those sentences in a manner most favorable to the defendant, which meant that they were deemed concurrent with the other sentences pronounced contemporaneously. *See Gatewood,* 158 Md.App. at 482, 857 A.2d 590; *Nash,* 69 Md.App. at 692, 519 A.2d 769; *Nelson,* 66 Md.App. at 314–15, 503 A.2d 1357.

This case stands closer to *Collins v. State,* 69 Md.App. 173, 196–99, 516 A.2d 1015 (1986), in which we removed ambiguity from a sentence by examining its context:

When it imposed terms of imprisonment under counts two, three, and five in the Lisa K. case, however, the court did not indicate that the terms were to run concurrently. The maximum penalties available under counts two, three, and five were thirty years, life, and twenty years respectively. If made concurrent with each other, a term of life imprisonment would result. If made consecutive to each other, a total of life increased by fifty years would result. Counts two and five were clearly stacked when described as "fifty years." The court's intention that this term should follow the life term is apparent by its use of the word "plus." Courts are encouraged to phrase their sentences with the word "consecutive" when successive terms are intended so that the accused and those charged with the execution of the sentence are advised of its duration. We do not, however, regard the term "consecutive" a talisman and where the duration of a sentence is otherwise discernable

from the record, it will be upheld without resort to the presumption of leniency.

(Emphasis added.)

■ In this case, we need not go to the lengths we did in *Collins* because the trial court explicitly pronounced the way in which each count related to at least one other count. As such, appellant's reliance on *Robinson v. Lee,* 317 Md. 371, 379–80, 564 A.2d 395 (1989), though correct, is self-defeating. In that case, the Court of Appeals did not discuss the rule of lenity precisely because the sentencing court was not silent on the issue, and the Court had only to interpret the meaning of the phrase "consecutive with sentence now serving" and similar pronouncements, there being several possible sentences fitting that description. Each of appellant's sentences, by contrast, unambiguously refers to another sentence.

If we hold each count to be concurrent to those not specified, that would directly contradict and undo the relationships that the court did specify for no reason. Case law does not demand that we interpret the time imposed for one count as concurrent with every count not explicitly related. To do so would not only cause us to enforce contradictions but would unduly burden a trial court that wishes to simplify its pronouncement by relying on logical combinations. Furthermore, appellant's interpretation of the rule of lenity could cause more confusion than it allegedly resolves. Appellant does not state precisely how, under his theory, the court should have pronounced his sentence. It appears, however, that he would have had the court state that count seven was *both* consecutive to count one *and* concurrent with count six, which could actually create additional confusion by leaving open the question of which count would take priority if the terms change.[8]

---

**8.** This problem would arise if count three were eliminated, in which case count six would become concurrent with count one, which would conflict with the pronouncement that count seven should be consecutive to count one.

The priority problem would be resolved by pronouncing, for example, that count seven is consecutive to the longest-running of counts one

If not that pronouncement, then appellant's theory would have the court state that count seven is "concurrent with count six and *not consecutive* to count one." The difference between stating "concurrent with count six and *not consecutive* to count one" and simply stating "concurrent with count six" is hypothetical at best and in any event is immaterial to the case at hand.[9]

Having established that there is no ambiguity in the court's original pronouncement, what remains of the judicial record gives no reason to apply the rule of lenity to appellant's sentences. Appellant's first argument therefore fails to establish any error in the court's amended order of commitment.

■ Appellant next argues that his sentences are ambiguous because the docket sheet conflicts with various records in the DPP, DOC, and MPC. Appellant cites several cases holding that a conflict between a trial transcript and docket entries

------

through six. Appellant did not address this scenario, but the general implication of his argument is that this would not suffice because it does not state exactly whether count seven is consecutive or concurrent with each of counts one through six. The only way to do so would be to consider every possible combination of counts one through six and then, for each combination, state how count seven relates to each one of those six sentences. We would obviously not burden the court with such a task—which would escalate by orders of magnitude with the number of sentences imposed—when the same meaning can be imparted with less effort by using logical constructions.

9. This distinction highlights the present confusion as to whether count seven is "consecutive to count one." In a technical and, hence, legal sense, count seven is not "consecutive to count one;" it is only "concurrent with count six." This is to say that count seven depends only on count six and operates independently of count one. In other words, count seven cannot begin to run *until count six begins to run,* as opposed to *after count one has expired.* The distinction is academic in the case at hand because the beginning of count six coincides with the end of count one. If count six were nullified, however, count seven would be left with nothing to which it could be "consecutive."

These facts are not before us, however, and so we need not decide what would occur if one or more "intermediate" sentences were nullified. The point of this discussion is to demonstrate that there is no ambiguity because count seven is not technically "consecutive" to count one and thus there is no contradiction when the court creates a chain of relations among sentences.

must be resolved in favor of the transcript. *See Gatewood v. State*, 158 Md.App. 458, 482, 857 A.2d 590 (2004) ("The transcript of the trial, unless shown to be in error, takes precedence over the docket entries." (quoting *Jackson v. State*, 68 Md.App. 679, 687–88, 515 A.2d 768 (1986) (quoting *Shade v. State*, 18 Md.App. 407, 411, 306 A.2d 560 (1973))) (internal quotation marks omitted)). However, as there is no transcript of appellant's sentencing, there can be no such conflict in this case.

The remains of the record from this case clarify the issues presented here and support the State's argument that appellant faced a maximum incarceration of seventy years. The Court of Appeals held in *Scott v. State* that the rule of lenity applies when a sentencing court does not "articulate the period of confinement with clarity so as to facilitate the prison authority's task." 379 Md. 170, 187, 840 A.2d 715 (2004) (quoting *Robinson*, 317 Md. 371, 564 A.2d 395) (internal quotation marks omitted). We are aware that in this case the DPP, DOC, and MPC misinterpreted the court's sentence, but this does not necessarily mean that the court failed in its duty by pronouncing a sentence that was unintelligible, *per se.* The mistakes in this case were caused by an extrajudicial error and were not due to objectively faulty logical or grammatical construction by a court. In other words, one person's misinterpretation—though perpetuated—does not render the underlying text ambiguous or contradictory.[10]

Furthermore, as appellee points out, the DPP, DOC, and MPC are executive agencies, and it would be unprecedented to extend the rule of lenity to their actions. Not surprisingly,

---

**10.** Admittedly, it would be better practice to pronounce a total sentence of time to be served after imposing multiple individual sentences. Absent a transcript, we do not know if that was done here when the original sentences were imposed. Moreover, we note that even doing so could not prevent all the pitfalls of which appellant complains, because no single statement could account for every potentiality, should some sentences be reduced, vacated, suspended, or otherwise changed. Although a summation is a helpful guide and often employed, we see no reason to enforce a rule that would make one absolutely necessary in every pronouncement of multiple sentences.

appellant cites no case that applies the rule of lenity in that manner, and our research has discovered none. The sentencing "articulated the period of confinement with clarity so as to facilitate the prison authority's task." It was only an unchecked error by that prison authority which introduced any ambiguity. Appellant has given us no reason that the rule of lenity should be extended in an attempt to reform the actions of executive agents and agencies. Moreover, appellant has cited no authority by which we may do so. We therefore reject appellant's argument that executive records that plainly contradict an unambiguous sentence can invoke the rule of lenity.

It is regrettable that the DPP introduced and perpetuated, along with the DOC and MPC, such a significant error of interpretation, but it does not undo the fact that appellant's sentences, as pronounced and reflected in court documents, were unambiguous and therefore legally binding. For the forgoing reasons, the rule of lenity has no bearing on this case. Appellant's sentences stand as stated by the original sentencing court and as reiterated by the more recent amended order of commitment. The trial court, therefore, did not err when it denied appellant's motions to correct an illegal sentence, and we affirm those rulings.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**