10 A.3d 201

**Edward BUTCHER a.k.a. Eddie N. Butcher, Jr.**

v.

**STATE of Maryland.**

**No. 0620, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Dec. 22, 2010.

David P. Kennedy (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Gary E. O'Connor (Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, ZARNOCH, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

RODOWSKY, J.

Here, a series of sentences was imposed at the same time. Each successive sentence was expressly consecutive to the sentence imposed before it. We must decide the effect on the total sentence when one of the sentences that has not yet been served is invalidated.

## Background Facts and Procedure

Appellant, Edward Butcher (Butcher), was convicted on multiple charges in the Circuit Court for Baltimore City. On April 17, 1996, the court (Ward, J.) sentenced him as follows:

"With respect to Case No. 195102053, Count 1, robbery with a deadly weapon, the verdict of the jury was guilty, the sentence of the Court is 20 years to the Department of Correction. With respect to Count 4, carrying a dangerous weapon openly with intent to injure, the knife, the verdict of the jury was guilty, the sentence of the Court is 3 years to Department of Correction to run consecutive to Count 1.

"With respect to Case No. 195102055, Count 3, assault and battery, which, of course, applies to the running of the car into the victim, and injuring severely, the verdict of the jury was guilty, the sentence of the Court is 10 years Department of Correction to run consecutive to Count 4, 195102053.

"With respect to the Case No. 195102091, Count 1, car jacking, the jury's verdict was guilty, the sentence of the Court is 30 years to the Department of Correction to run consecutive to Count 3 of 195102055."

In this opinion, to simplify the analysis in our discussion, we shall use letters to designate the sequence of sentences. Thus, Butcher's sentences were:

A—twenty years;

B—three years, consecutive to A;

C—ten years, consecutive to B; and

D—thirty years, consecutive to C.

The convictions were affirmed by this Court in an unreported opinion. *Butcher v. State,* No. 0899, Sept. Term, 1996 (filed Mar. 27, 1997).

In 1999, Butcher petitioned the Circuit Court for Baltimore City for post-conviction relief, contending, *inter alia,* that sentence B merged with sentence A. The court (Cannon, J.) agreed, and, on November 30, 1999, entered judgment vacating B. All other claims in the petition were denied. A Commitment Record reflecting the modification made to Judge Ward's sentence of April 17, 1996, stated that sentence C was consecutive to sentence A and that the total time to be served was sixty years, a reduction of the three years imposed by B.

The proceedings resulting in the instant appeal were initiated by Butcher's pro se motion to correct an illegal sentence, filed February 25, 2008, in the Circuit Court for Baltimore City. The motion was heard by the court (Nance, J.) on May 6, 2009. The Office of the Public Defender represented Butcher. Butcher contended that, after sentence B was eliminated, there was no relationship stated in Judge Ward's pronouncement of sentences between sentence A, then being served, and sentence C, so that sentences C and D must be deemed concurrent with A. The result would be an additional reduction of twenty years, resulting in a total sentence of forty years. This argument was based on language appearing in a footnote in *Smith v. State,* 23 Md.App. 177, 325 A.2d 902 (1974), that is discussed, *infra.* The court undertook to distinguish *Smith* and denied the motion.

From that denial, this appeal was noted. The only question presented is, "Did the lower court err in denying Mr. Butcher's motion to correct an illegal sentence?"

## Discussion

### I. Scope of a Motion to Correct an Illegal Sentence

The State suggests that the motion to correct an illegal sentence under Maryland Rule 4–345(a) (2010) does not em-

brace Butcher's contention because the alleged illegality does not "inhere in the sentence itself," citing *Pollard v. State*, 394 Md. 40, 47, 904 A.2d 500, 504 (2006). Here, however, if Butcher is correct, the failure to give full effect to the merger of B into A is that the court has illegally increased his total sentence. In *State v. Griffiths*, 338 Md. 485, 659 A.2d 876 (1995), the Court of Appeals stated that "the imposition of sentence on the greater offense had the effect of rendering the sentence on the lesser offense illegal as a cumulative sentence prohibited by double jeopardy protections." *Id.* at 496–97, 659 A.2d at 882. The Court of Appeals held that, under those circumstances, the trial court should have vacated the sentence on the lesser charge by applying Rule 4–345(a) on its own motion. *Griffiths* is sufficiently analogous to the instant matter to permit Butcher to proceed under Rule 4–345(a).

## II. Consecutive or Concurrent?

### A. The Maryland Cases

Butcher contends in his brief that "the sentences purportedly made consecutive to the sentence imposed on the dismissed charge were by operation of law concurrent to the armed robbery sentence," that is, that C and D became concurrent with A. Butcher's brief presents the purported result of the merger of B into A as: " 'A, concurrent with (C + (D, consecutive to C)),' " that is, that C, began to run when A commenced. This produces a total sentence of forty years (the ten years of C and the first ten years of the thirty years of D overlap the twenty years of A). At oral argument, Butcher compared the interrelationships of the sentences to cantilever construction in which A is the base block, and B, C, and D, in that order, are blocks that build upon A. Thus, when B was removed, C, and its attachment D, dropped down to be concurrent with A, producing a total sentence of forty years. The State contends that the result of vacating B is that C became consecutive to A, and that D remained consecutive to C, producing a total sentence of sixty years.

Butcher articulates the broad principle on which he relies to be that, "if two sentences are not expressly made consecutive, they are concurrent." In support he cites *Gatewood v. State,* 158 Md.App. 458, 482, 857 A.2d 590, 603 (2004), *aff'd,* 388 Md. 526, 880 A.2d 322 (2005), and *Nelson v. State,* 66 Md.App. 304, 312–13, 503 A.2d 1357, 1361 (1986). A similar argument, based on *Gatewood* and *Nelson,* was presented to this Court in *Palmer v. State,* 193 Md.App. 522, 998 A.2d 361, *cert. denied,* 416 Md. 274, 6 A.3d 905 (2010). We said that *Palmer* "misconstrue[d] the holdings" in those two decisions because "those cases turned on the fact that their pronouncements failed to specify how the sentence in question related to *any other sentence, at all.*"[1] *Id.* at 529, 998 A.2d at 366. In the case before us, the interrelationships of the sentences were specified when they were pronounced.

More particularly, Butcher relies on language in *Smith v. State,* 23 Md.App. 177, 325 A.2d 902. *Smith* involved four appellants who had committed an armed robbery in which there were twenty-six victims. The indictment presented the charges in 117 counts. The sentences imposed on appellant Smith illustrate Butcher's point. Smith was sentenced (A) to twenty years for the robbery of one victim; (B) to fifteen years, consecutive to A, for assault with intent to murder a second victim; (C) to ten years, consecutive to B, for the false imprisonment of a third victim; and (D) to fifteen years, consecutive to C, for use of a handgun. All appellants argued that the sentences on their convictions for false imprisonment should merge into their sentences for robbery. This Court

---

1. In *Gatewood,* the defendant was convicted on three charges. The sentencing court said that A would be twenty years, that, as to B, "the sentence is twenty years, but that sentence is suspended," and that, as to C, "the sentence is twenty years concurrent and suspended." 158 Md.App. at 480, 857 A.2d at 602–03. This Court held that B and C were concurrent with A.

In *Nelson,* "the trial court did not state whether the sentences which were imposed and suspended were to be served, upon their execution, concurrently or consecutively to each other." 66 Md.App. at 309, 503 A.2d at 1359.

rejected that contention out of hand because, as to each appellant, the two crimes involved separate victims.

In footnote 4, following an initial presentation of the appellants' merger contention, the Court noted that, in the sentencing of all appellants, the sentence upon additional convictions was made consecutive only to the sentence immediately preceding it. In all cases but Smith's, the sentence immediately preceding that for false imprisonment was for an armed robbery. In Smith's case, however, the sentence for false imprisonment was consecutive to his sentence for assault with intent to murder.[2] The Court then ruminated on the effect on the total sentence if the judgment in Smith's case on that assault conviction were reversed or vacated. In that context, the Court made the following statement, on which Butcher relies.

"[T]he sentence on the robbery conviction and the sentence on the false imprisonment conviction would run concurrently with each other, there being no existing sentence to which the false imprisonment sentence was designated to run consecutively. The rule of the common law was that, in the absence of any statute, if it is not stated in either of two sentences imposed at the same time that one of them shall take effect at the expiration of the other, the two periods of time will run concurrently, and the two punishments executed simultaneously. 5 *Wharton's Criminal Law and Procedure,* § 2214 (Anderson, 1957); Annotation: When sentences imposed by same court run concurrently or consecutively; and definiteness of direction with respect thereto, 70 A.L.R. 1511. Compare Code, Art. 41, § 123. See Annotation: Effect of invalidation of sentence upon separate sentence which runs consecutively, 68 A.L.R.2d 712."

*Id.* at 184 n. 4, 325 A.2d at 906 n. 4.

Clearly, the language relied upon by Butcher is dictum in the *Smith* opinion. The language forms no part of the reason-

---

**2.** From the standpoint of the merger of sentences, the significance of this distinction is unclear.

ing for the holding that sentences do not merge where they are imposed for crimes against separate victims. The language addresses hypothetical facts that were not presented in the *Smith* case.

Further, 5 *Wharton's Criminal Law & Procedure* § 2214, at 429 (Anderson 1957), cited in support of the dictum, states in relevant part:

> "In the absence of a statute to the contrary, if accused is convicted of more than one offense or under more than one count, sentences of imprisonment imposed under the different counts, or for different offenses, if by the same court, will be construed as running concurrently, and the accused will be discharged at the expiration of the longest term, unless the sentences expressly state otherwise[.]"

The principle stated in *Wharton's* is illustrated by *Gatewood* and *Nelson. Wharton's* does not address the vacating of one of multiple sentences, each of which is consecutive only to the immediately preceding sentence.

The Annotation, "Effect of invalidation of sentence upon separate sentence which runs consecutively," 68 A.L.R.2d 712 (1959) (the Annotation), actually supports the State's position in the instant case. There the editors summarized the decisions in cases analogous to that before us by stating:

> "Where separate, consecutive sentences have been imposed at the same time—for example, under a multiple count indictment—and the conviction for which the earlier sentence was imposed is reversed, or the earlier sentence is otherwise invalidated, it has been held that the later sentence runs from the date on which imprisonment under the earlier sentence was commenced."

*Id.* at 716.

The State submits that the case before us should be decided consistently with *Wilson v. Simms,* 157 Md.App. 82, 849 A.2d 88, *cert. denied,* 382 Md. 687, 856 A.2d 723 (2004). Wilson sought release on habeas corpus from the custody of the Division of Correction (DOC). He contended that his mandatory supervision release date had expired if his diminution of

confinement credits were correctly calculated. This issue turned on the commencement date of Wilson's imprisonment imposed by the Circuit Court for Carroll County. On January 20, 1979, the Circuit Court for Talbot County had sentenced Wilson to fifty years, consecutive to sentences previously imposed in other jurisdictions. At that time, Wilson was serving a sentence in Delaware. On February 8, 1979, the Circuit Court for Carroll County sentenced Wilson to thirty-six years " 'consecutive with the sentence received in Talbot County[.]' " *Id.* at 85, 849 A.2d at 90. Wilson was paroled by Delaware, to a Maryland detainer only, on January 23, 1990. For reasons that are not in the record, Maryland did not take Wilson into custody until May 2, 1990. At some point thereafter, Wilson sought post-conviction relief in the Circuit Court for Talbot County, claiming prosecutorial misconduct. That relief was granted, and the Talbot County sentence was vacated on March 26, 1999, by a judgment that was ultimately affirmed by the Court of Appeals. In calculating Wilson's diminution credits, DOC considered that the Carroll County sentence started when the Talbot County sentence was vacated on March 26, 1999. Wilson contended that the Carroll County sentence started on February 8, 1979, when it was imposed.

Thus, the relationship between sentences in *Wilson* is (A) Delaware sentence, length unspecified; (B) Talbot County, fifty years, consecutive to A; and (C) Carroll County, thirty-six years, consecutive to B. This Court held that the habeas corpus court erred in concluding that the Carroll County sentence did not commence until the Talbot County sentence was vacated. That analysis, in violation of Maryland Code (2001, 2008 Repl.Vol.), § 6–218 of the Criminal Procedure Article (CP), denied Wilson credit for the period spent in Maryland custody from May 2, 1990, to March 26, 1999.

This Court also rejected Wilson's position. He argued that "the Carroll County sentence should be deemed to have begun on the date it was imposed because, when the Talbot County convictions were vacated, the effect was as if they never existed." *Wilson,* 157 Md.App. at 92, 849 A.2d at 94. Thus,

Wilson, as does Butcher, sought to have his Carroll County sentence considered as running concurrently with his Delaware sentence. This Court, however, ruled:

"[T]he Carroll County sentencing court clearly and unambiguously made the sentence consecutive to the Talbot County sentence, which was clearly and unambiguously consecutive to the sentence being served in Delaware. Consequently, the Carroll County sentence clearly and unambiguously was consecutive to the sentence being served in Delaware."

*Id.* at 97–98, 849 A.2d at 97. Applying the rule of lenity to the construction of CP § 6–218, we concluded that Wilson's diminution credits should be computed with a starting date of May 2, 1990, when he came into this State's custody. Denial of the habeas corpus relief was affirmed, but the DOC was directed to recompute Wilson's credits in accordance with this Court's opinion. In a nutshell, *Wilson* held that when B was vacated, C began when B was to begin.

Butcher contends that *Wilson* is inapplicable here, because it involved sentences imposed at different times in different jurisdictions. That attempted distinction does not assist Butcher's position. The Annotation at 68 A.L.R.2d 712 does divide its presentation between consecutive sentences imposed at the same time and consecutive sentences imposed at different times. Prompting these classifications by the editors is *Kite v. Commonwealth*, 52 Mass. (11 Met.) 581 (1846). In *Kite*, A, B, and C were imposed before D, which was made consecutive to A, B, and C. When A, B, and C were set aside, Kite contended that there was no date by which D's commencement could be determined. *Kite* took the view that A, B, and C were voidable, but not void, and were to be deemed in full force and effect until set aside, so that D did not begin until A, B, and C were set aside. As a result, Kite did not receive credit for the time served under A, B, and C.

The rule applied in *Kite*, however, was disavowed, as dictum, in *Brown v. Commissioner of Correction*, 336 Mass. 718, 147 N.E.2d 782, 783–84 (1958). The court agreed with

Brown's argument that it was unfair to deny credit for time served. *See also Jamison v. Cupp,* 27 Or.App. 109, 555 P.2d 475, 476 (1976) (citing numerous federal and state cases rejecting the *Kite* rationale).

*Wilson,* consistent with the Maryland public policy found in CP § 6–218, adopted the *Brown* rule. *Wilson* did not treat the Carroll County sentence, once imposed, as running *concurrently* with the balance of the Delaware sentence, the type of result for which Butcher contends here.

Butcher seeks to minimize the import of *Wilson* by pointing out that *Wilson* does not refer to *Smith v. State* and its above-quoted footnote. 23 Md.App. at 184 n. 4, 325 A.2d at 906 n. 4. The State finds no significance in that fact, pointing out that *Smith* was not cited by either party in their briefs to the *Wilson* Court.

Both Butcher and the State find support for their respective positions in our recent decision in *Palmer v. State,* 193 Md. App. 522, 998 A.2d 361, decided July 5, 2010. Palmer was sentenced by the Circuit Court for Howard County on December 19, 1980. DOC and other Executive Department records reflected a total sentence of forty years. In 2008, a DOC audit determined that Palmer's total sentence should be seventy years, as shown by certain judicial records that had survived a record destruction program. When the circuit court modified its commitment record to reflect a total sentence of seventy years, Palmer asserted that the increase was illegal. Palmer's sentence is depicted below.

    A.   Thirty years;

      B.   Ten years, consecutive to A;

      C.   Six years, concurrent with B;

      D.   Thirty years, concurrent with C;

        E.   Ten years, consecutive to D; and

        F.   Three years, concurrent with E.

Relying on *Gatewood,* 158 Md.App. 458, 857 A.2d 590, and *Nelson,* 66 Md.App. 304, 503 A.2d 1357, Palmer contended that, because D was not explicitly made consecutive to A, it

ran concurrently with A, producing a total sentence of forty years. *Palmer's* conclusion, that *Gatewood* and *Nelson* "turned on the fact that their pronouncements failed to specify how the sentence in question related to *any other sentence, at all*," has been addressed, *supra. Palmer,* 193 Md.App. at 529, 998 A.2d at 366. Basically, this Court held in *Palmer* that, because D was concurrent with C, and C was concurrent with B, D was concurrent with B. Accordingly, because B was consecutive to A, D was consecutive to A. Thus, the total sentence was seventy years (A, thirty years + D, thirty years + E, ten years).

*Palmer* referred to these relationships as the "'transitive property'" of consecutive sentences. That opinion explained "transitivity."

"If a relation between things (be they numbers, sentences, or what have you) is transitive, then if one thing is related to a second thing, and that second thing is similarly related to a third thing, then the first and the third things are related in the same way. The relationship 'is greater than' is perhaps the simplest example. It is transitive because if $x$ is greater than $y$ and $y$ is greater than $z$, then $x$ is greater than $z$. Here, the question is whether sentence $x$ being consecutive to $y$, and $y$ consecutive to $z$, implies that $x$ is consecutive to $z$, as well."

*Id.* at 529 n. 7, 998 A.2d at 366 n. 7. This is the same reasoning that was employed in *Wilson* when we said, in effect, that if C is consecutive to B and B is consecutive to A, then C is consecutive to A. *Wilson,* 157 Md.App. at 97–98, 849 A.2d at 97.

Further explaining why it was unnecessary under the facts in *Palmer* to require D expressly to be made consecutive to A, this Court said:

"If we hold each count to be concurrent to those not specified, that would directly contradict and undo the relationships that the court did specify for no reason. Case law does not demand that we interpret the time imposed for one count as concurrent with every count not explicitly related.

To do so would not only cause us to enforce contradictions but would unduly burden a trial court that wishes to simplify its pronouncement by relying on logical combinations. Furthermore, appellant's interpretation of the rule of lenity could cause more confusion than it allegedly resolves. Appellant does not state precisely how, under his theory, the court should have pronounced his sentence. It appears, however, that he would have had the court state that [D] was *both* consecutive to [A] *and* concurrent with [C], which could actually create additional confusion by leaving open the question of which count would take priority if the terms change."

*Id.* at 531, 998 A.2d at 367.

Butcher, on the other hand, emphasizes language in *Palmer* that, without citing *Smith,* echoes the thought expressed in footnote 4 of *Smith,* 23 Md.App. at 184 n. 4, 325 A.2d at 906 n. 4. In discussing the lack of ambiguity in Palmer's sentences, this Court said:

"In a technical and, hence, legal sense, [D] is not 'consecutive to [A];' it is only 'concurrent with [C].' This is to say that [D] depends only on [C] and operates independently of [A]. In other words, [D] cannot begin to run *until [C] begins to run,* as opposed to *after [A] has expired.* The distinction is academic in the case at hand because the beginning of [C] coincides with the end of [A]. If [C] were nullified, however, [D] would be left with nothing to which it could be 'consecutive.'

"These facts are not before us, however, and so we need not decide what would occur if one or more 'intermediate' sentences were nullified."

*Palmer,* 193 Md.App. at 532 n. 9, 998 A.2d at 368 n. 9.

The opinion in *Palmer* expressly recognizes that its philosophizing over the effect of the nullification of one in a series of consecutive sentences is dictum. *Palmer* does not cite *Wilson,* which *held* that the next valid consecutive sentence takes effect when the invalid consecutive sentence was to commence. *Wilson,* 157 Md.App. at 97–98, 849 A.2d at 97.

## B. Out–of–State Cases

Turning to the decisions of courts other than those of Maryland, we find the majority rule to be that, when one of a series of consecutive sentences is nullified, the next valid sentence begins on the date set for the commencement of the invalidated sentence. The Supreme Court of Georgia so concluded in *Jackson v. Jones*, 254 Ga. 127, 327 S.E.2d 206 (1985). Jackson had been sentenced on October 4, 1966, to (A) life imprisonment and (B) a consecutive ten year sentence. The life sentence was vacated in 1983. On a habeas corpus petition filed in 1984, the court held that Jackson was entitled to release from confinement. The court reasoned:

> "Although there is a division of authority on the question, it would appear to us that the majority, and better reasoned, view is that where consecutive sentences for separate offenses are imposed at the same time, and where the underlying conviction for which the earlier sentence was imposed is reversed or set aside, the time the defendant served under the invalidated sentence will be credited toward the latter sentence so that the latter sentence will be held to have commenced at the date of commencement of the earlier, invalid sentence."

*Id.* at 207.

Frequently cited in support of the rule applied by the Georgia court is *Blitz v. United States*, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725 (1894). Blitz was convicted on two counts of voter fraud committed in Kansas City in the federal election of 1892. The sentences were (A) a year and a day, and (B) a year and a day, commencing on the expiration of A. The Supreme Court reversed the conviction underlying A, but rejected Blitz's contention that he was entitled thereby to a new trial. Rather, the term of imprisonment under B commenced on "the date fixed by the judgment below for imprisonment to begin" on A. *Id.* at 318, 14 S.Ct. at 928.

*Tucker v. Peyton*, 357 F.2d 115 (4th Cir.1966), a habeas corpus case, is to the same effect. Tucker had been sentenced (A) in 1956 for breaking and entering, resulting in his being

sentenced (B) as a third offender in 1956. He was later sentenced (C) for escape in 1957 and (D) for escape in 1960. The prisoner contended that a 1942 conviction underlying B was invalid, so that B was invalid. Because A had been fully served, the District Court held that Tucker had no standing to seek the writ. The Fourth Circuit held that the prisoner had standing by applying the following rationale: If B were invalid, service of C "must be advanced to the expiration in service of" A, "but not earlier than the date of imposition of" C. Similarly, service of D "would begin after the service of [C], but not before [D] was imposed." *Id.* at 118; *see also* A.W. Campbell, *Law of Sentencing* § 9:13, at 284 (2d ed. 1991) (stating that, where the invalid sentence was imposed at the same time as other valid sentences were imposed, "courts simply vacate the invalid sentence and deem the valid one to have commenced the same day service began on the invalid sentence"); *compare State v. Smith,* 267 N.C. 755, 148 S.E.2d 844 (1966) (after invalidating A, to which B was to run consecutively, ordering the issuance of a new commitment record containing only B but effective upon A's imposition date, thus giving defendant credit for time served under A).

## C. Decision

The out-of-state cases reviewed above, by moving the commencement date of the next valid sentence up to that of the invalidated sentence, give the prisoner credit for time served under the invalidated sentence. This is consistent with American Bar Association, *ABA Standards for Criminal Justice Sentencing,* Standard 18–3.21(f) (3d ed. 1994).[3]

■ Here, Butcher has received credit for the invalidated sentence, B, because his total sentence was reduced by the

---

3. In relevant part, Standard 18–3.21(f), at 133, reads:
   "When an individual has been sentenced to consecutive terms of total confinement, credit toward the remaining sentence should be given for time spent in custody under a sentence that has been set aside as a result of appeal or postconviction review without reprosecution or resentence for that offense or for another offense based on the same conduct."

three year length of B when C was moved up and considered to commence when B was to commence, *i.e.* to run consecutively to A. Butcher, however, seeks to get twenty-three years of credit; three from the invalidation of B and twenty more by deeming C and then ten years of D to run concurrently with A.

The sentencing court clearly intended to impose a total sentence of sixty-three years. There is no reason, persuasive to us, to reduce that total sentence for more than the three years that should have been merged. The relationships between the consecutive sentences, as articulated by the sentencing court, do not support ruling that, if B were invalidated, A should do "double duty."

Other than the dicta in *Smith* and *Palmer,* Butcher has presented no authority in support of his position, and our research has not disclosed any. Nor do we find any support in the *ABA Standards for Criminal Justice Sentencing* for converting any of the valid sentences imposed here from consecutive to concurrent. Indeed, the dicta in *Smith* and *Palmer* are contrary to the substance of this Court's holding in *Wilson.* We disapprove that dicta and apply the substance of the holding in *Wilson* in conformity with the majority rule.

Under the facts and the interrelationships of the sentences presented here, we hold that the next valid consecutive sentence began at the time set for the commencement of the invalidated consecutive sentence.

### III. Maryland Rule 4–345(f)

██ In the penultimate paragraph of his brief, Butcher says:

"When Judge Cannon later reissued the current commitment order ... for 60 years, without the hearing required by Md. Rule 4–345(f), *Mateen* [*v. Saar* ], 376 Md. [385,] 399, 829 A.2d [1007,] 1015 [ (2003) ], she unlawfully raised the sentence."

The State treats this comment as if it were an argument based on Rule 4–345(f).

That rule reads as follows:

"(f) **Open court hearing.** The court may modify, reduce, correct, or vacate a sentence only on the record in open court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard. The defendant may waive the right to be present at the hearing. No hearing shall be held on a motion to modify or reduce the sentence until the court determines that the notice requirements in subsection (e)(2) of this Rule have been satisfied. If the court grants the motion, the court ordinarily shall prepare and file or dictate into the record a statement setting forth the reasons on which the ruling is based."

The rule was fully complied with when Judge Cannon, after holding hearings in open court on July 13 and October 19, 1999, ruled that Butcher's "sentence for carrying a deadly weapon with intent to injure will be vacated but otherwise the conviction and sentence remain[ ] the same." Further, Butcher had the opportunity at the hearings before Judge Cannon to argue the effect on the total sentence if his merger argument prevailed.

In any event, the alleged error is harmless beyond a reasonable doubt. The issue is purely one of law, and we have held that the commitment is legally correct.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**