*Carlos D. Bivens v. Amondre Clark*, No. 48, September Term, 2024, Opinion by Booth, J.

**TIME SERVED CREDIT FOR VACATED SENTENCES ARISING FROM VACATED CONVICTIONS—MARYLAND CODE ANN., CRIMINAL PROCEDURE ARTICLE ("CP") § 6-218(d)**

When a criminal defendant's term of confinement consists of multiple sentences, and one or more convictions underlying those sentences is vacated, but at least one valid, active sentence remains, the defendant is entitled to receive credit for time served required by CP § 6-218(d) when the conviction is vacated and commencing on the date of the first invalidated sentence. This interpretation of CP § 6-218(d) is consistent not only with its plain and unambiguous language, but also with the statute's purpose of eliminating "dead time"—time spent in custody that will not be credited to any valid sentence. It also ensures a one-for-one method of awarding time-served credits.

**TIME SERVED CREDIT WHEN A DEFENDANT IS REPROSECUTED OR RETRIED—CP § 6-218(c)**

Where CP § 6-218(d) has already been applied, and a criminal defendant is reprosecuted or retried after his or her conviction is vacated, and the proceeding results in a new conviction, CP § 6-218(c) applies to the extent that there is leftover credit remaining after credit has been given under CP § 6-218(d) for time spent in custody on the invalidated judgment(s) at the time those judgments were stricken.

**NEW SENTENCE ARISING FROM NEW CONVICTION—LAST CHAIN IN THE SENTENCING SEQUENCE AND IN THE BATTING ORDER**

Where a reprosecution or retrial results in a new conviction, the new sentence is in last place in a chain of consecutive sentences, and the sentencing judge who imposes the new sentence is in last place in the sentencing batting order. In that case, the sentencing judge may make the new sentence(s) consecutive or concurrent to any then-existing sentences.

**SENTENCING COURT'S DISCRETIONARY SENTENCING AUTHORITY**

In this case, the sentencing record does not reflect whether the sentencing judge, in exercising his sentencing discretion, accounted for remaining valid consecutive sentences when he announced the time served sentence arising from the new conviction. Given the many disconnects in the record, the Supreme Court of Maryland vacated the judgment of the habeas court, and remanded the case to the habeas court with instructions to: (1) vacate the sentence entered on April 17, 2024; and (2) remand the matter to the sentencing court to enable the sentencing court to exercise its discretion with a full and complete understanding of the status of the valid sentences.

Circuit Court for Baltimore City
Case No.: C-24-CV-24-000761
Argued: June 5, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 48

September Term, 2024

CARLOS D. BIVENS

v.

AMONDRE CLARK

Fader, C.J.,
Booth,
Biran,
Gould,
Eaves,
Killough,
Getty, Joseph M., (Senior Justice)
Specially Assigned,

JJ.

Opinion by Booth, J.

Filed: July 11, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from the successful petition for writ of habeas corpus filed by Appellee, Amondre Clark, and his release from the custody of the Division of Correction ("Division"). As we discuss more fully herein, after several of Mr. Clark's convictions were vacated on October 20, 2023, the Division did not execute the next valid sentences under Mr. Clark's term of confinement and apply credit for time served under the vacated convictions. Instead, the Division tolled his next valid consecutive sentences and waited to see if the State's reprosecution would result in a new conviction.

When Mr. Clark pled guilty to one of the charges against him on April 17, 2024, the sentencing judge sentenced him to a new "time served" sentence. The record of the sentencing hearing reflects that the court and the parties expected Mr. Clark to be immediately released. However, the Division refused to release Mr. Clark. The Division did not treat the April 17, 2024 time served sentence as a new sentence, but instead considered it a "replacement sentence" for one of the sentences that had been vacated when Mr. Clark's convictions were invalidated. The Division then tacked on the consecutive sentences that it had tolled pending reprosecution. The Division's sentence restructuring was based upon an informal policy change to the manner in which it interpreted subsections (c) and (d) of § 6-218 of the Criminal Procedure ("CP") Article of the Maryland Code (2018 Repl. Vol., 2024 Supp.) and this Court's decision in *Scott v. State*, 454 Md. 146 (2017). The result of the restructuring was that Mr. Clark received no credit for the time he served on the vacated convictions against the convictions that were never vacated.

Mr. Clark filed a petition seeking habeas relief in the Circuit Court for Baltimore City, asserting that the Division incorrectly interpreted the provisions of CP § 6-218(c) and

(d).  The habeas court agreed and ordered his immediate release.  The Division appealed to the Appellate Court of Maryland.  While this case was pending in the Appellate Court, we granted Mr. Clark's petition for a writ of certiorari to answer the following question, which we have slightly rephrased:

> Whether the habeas court correctly concluded that, upon the vacatur of an individual's convictions, the Division must: (1) immediately execute any remaining valid sentence in the individual's term of confinement and apply credit for time served under the vacated conviction pursuant to CP § 6-218(d); and (2) treat any new conviction imposed upon reprosecution as a new, separate judgment rather than a modification of sentence.

We agree with the habeas court's legal conclusions as they are phrased above. However, as discussed below, the sentencing record does not reflect whether the sentencing judge, in exercising his sentencing discretion, accounted for remaining valid consecutive sentences when he announced the time served sentence arising from the new conviction. Given the many disconnects in the record, we vacate the judgment of the habeas court, and remand this case to the habeas court with instructions to: (1) vacate the sentence entered on April 17, 2024; and (2)  remand the petition to the Circuit Court for Montgomery County in case number 127950C for the sentencing court to exercise its discretion with a full and complete understanding of the status of the valid sentences.

# I

## Underlying Convictions

On January 7, 2016, Mr. Clark was sentenced in the Circuit Court for Montgomery County, in case numbers 127869C, 127950C, and 128051C, for firearm- and burglary-related convictions, as follows:

2

- -869C: 10 years with all suspended but 5 years without parole;

- -950C: 8 years with all suspended but 5 years, consecutive to -869C; and

- -051C: 8 years with all suspended but 3 years, consecutive to -869C and -950C

In these cases, Mr. Clark was sentenced to a 26-year total term, with all but 13 years suspended.

On February 18, 2016, Mr. Clark was sentenced for a violation of probation in the Circuit Court for Montgomery County in case number 123587C, Count I (Third Degree Burglary), to 3 years and 6 months, to be served consecutive to the sentences imposed in case numbers -869C, -950C and -051C.

On October 20, 2022, Mr. Clark was sentenced in the Circuit Court for Washington County, in case number C-21-CR-322-000466, Count 2 (Possession of Contraband in Place of Confinement) to 1 year and 1 day, to be served consecutive "to the last sentence to expire of all outstanding and unserved sentences."

To simplify the analysis, we will use letters to designate the sequence of sentences. Thus, counting only time ordered to be served, Mr. Clark's sentences were:

| | | |
|---|---|---|
| **A:** | (-869C) | 5 years, from July 24, 2015 |
| **B:** | (-950C) | 5 years, consecutive to A |
| **C:** | (-051C) | 3 years, consecutive to B |
| **D:** | (-587C) | 3 years and 6 months, consecutive to A, B, & C |
| **E:** | (-466) | 1 year and 1 day, consecutive to D |

On October 20, 2023, the Circuit Court for Montgomery County granted Mr. Clark's motion to correct an illegal sentence in case numbers -869C, -950C, and -051C on the basis that Mr. Clark had entered into a binding plea agreement promising a cap of 15 years of incarceration but was then sentenced to 26 years.

3

As a remedy, Mr. Clark was entitled to choose between either specific enforcement of the agreement or withdrawal of the plea. *See Cuffley v. State*, 416 Md. 568, 583 (2010). During voir dire, defense counsel explained to Mr. Clark:

> And you understand that you have two choices of remedy? You can be resentenced within the confines of that original plea which had a cap of 15 years. Okay, so that would be your maximum sentence. Where -- and your other option is to withdraw your guilty plea in which you would sort of be back at the beginning of the criminal process and the State has indicated its intention to take you to trial.

Mr. Clark elected to withdraw his guilty pleas. The court withdrew the guilty pleas and held Mr. Clark without bond pending new trials.

On April 17, 2024, Mr. Clark pled guilty to one count of first-degree burglary in case number -950C, the case formerly associated with sentence B, and was sentenced to 8 years, 8 months, and 26 days, with credit for 8 years, 8 months, and 26 days—which the court called a "time served" sentence.

The sentencing transcript from the April 17 hearing reflects that the prosecutor, defense counsel, the court, and Mr. Clark all contemplated that Mr. Clark was going home that day.

| THE COURT: | All right. The Court imposes that sentence commencing on July 23rd, 2015. Eight years, eight months -- |
| --- | --- |
| [DEFENSE COUNSEL]: | 26. |
| THE COURT: | 26 days and five minutes. Knock off the five minutes. And where are you going, sir? |
| MR. CLARK: | Home. |
| THE COURT: | I mean, where's home? |

4

MR. CLARK:                  Silver Springs with my mother.

When the court imposed the new time served sentence, there was no discussion about the status of sentences D and E, although, as reflected below, defense counsel requested that the court make it clear that the time served sentence was intended to be "concurrent to all other sentences." Moreover, defense counsel was concerned that the Division might not correctly interpret Mr. Clark's commitment record:

> [DEFENSE COUNSEL]: I . . . . DOC may or may not have issues interpreting the commitment record in this case, because it was a previous conviction that was vacated. So I want to make clear for the record, and I don't know how much of this you can put in the commitment record. There was a conviction in -- there was one conviction in each of these cases. So a conviction for each case number.
>
> What the Court, I think, needs to do is vacate the convictions and sentences for all three of those cases, impose the new conviction and sentence in the one case. Because otherwise DOC will not calculate it correctly. *And make it clear that it's concurrent to all other sentences.* I think that that will accomplish what your Honor is trying to accomplish.
>
> [THE STATE]: But the other cases were already vacated when the pleas were withdrawn.
>
> [DEFENSE COUNSEL]: They're still showing up on case search and just some sort of language, either on the record or in the commitment record, saying that they're vacated I think solve -- I'm anticipatorily trying to solve a problem --
>
> THE COURT: Okay.

5

[DEFENSE COUNSEL]:   . . . So in all three of those cases, there was one conviction in each case number.  I think the Court needs to make clear that all three of those convictions and sentences were vacated.  And then we have a new conviction and new sentence in the one case.

The sentencing court asked for the case numbers for the vacated convictions, and the court clerk provided the case numbers to him.  The sentencing court then stated that the record should be made "very clear" that the court was imposing its sentence in -950C.  The court ordered that Mr. Clark be released from commitment with respect to case number -950C.  Thereafter, the State entered a nolle prosequi with respect to case numbers -869C, and -051C, the cases formerly associated with sentences A and C, and the court issued release from commitment forms in both cases.  However, the Division did not release Mr. Clark.

Following the April 17, 2024 hearing, the Division's sentence calculation worksheet reflects that the Division restructured Mr. Clark's term of confinement by substituting the new time served sentence for former sentence B so that sentence D ran consecutive to the new sentence, followed by sentence E:

A:    (-869C)    5 years, from July 24, 2015 (nolle prossed)
B:    (-950C)    Time served, expiring April 17, 2024
C:    (-051C)    3 years, consecutive to B (nolle prossed)
D:    (-587C)    3 years and 6 months, consecutive to B
E:    (-466)     1 year and 1 day, consecutive to D

By the Division's calculations, sentence D would expire on October 17, 2027, at which point sentence E would commence.  Sentence E, in turn, would expire on October

6

18, 2028. Thus, according to the Division, Mr. Clark's maximum release date was October 18, 2028.

## II

## Habeas Proceedings

Mr. Clark filed a petition for writ of habeas corpus in the Circuit Court for Baltimore City on June 11, 2024. The Division filed an answer opposing Mr. Clark's petition, and Mr. Clark filed a reply.

In his habeas petition, Mr. Clark asserted that he should have been released on April 17, 2024. Mr. Clark pointed out that his convictions associated with sentences A, B, and C were vacated on October 20, 2023. Mr. Clark argued that, at this point, under CP § 6-218(d), the Division should have immediately executed the next valid terms of confinement—sentence D, followed by sentence E. Mr. Clark asserted that his sentence sequence as of October 20, 2023 should have become:

<div style="white-space:pre">
A:      ( 869C)      5 years, from July 24, 2015 (VACATED)
B:      ( 950C)      5 years, consecutive to A (VACATED)
C:      ( 051C)      3 years, consecutive to B (VACATED)
D:      (-587C)      3 years and 6 months from July 24, 2015
E:      (-466)       1 year and 1 day, consecutive to D
</div>

If the Division had commenced sentences D and E when the underlying convictions associated with sentences A, B, and C were vacated, Mr. Clark argued that his Division of Correction term of confinement would have expired at that point, and he would have been transferred to the custody of the Montgomery County Department of Correction and Rehabilitation pending readjudication in case numbers -869C, -950C, and -051C.

7

Instead of immediately commencing sentence D, the Division tolled it pending the disposition of the charges in case numbers -869C, 950C, and -051C. During this tolling period, the Division held Mr. Clark in its custody for nearly six months with no active sentences running while it waited to see if the State would secure new convictions.

Mr. Clark argued that the Division's failure to commence sentence D upon his convictions being vacated violated CP § 6-218(d) and that the Division had no discretion to withhold the running of his next valid sentence. Mr. Clark alleged that the Division's tolling was the result of an informal policy change in March 2023 based upon the Division's interpretation of this Court's decision in *Scott v. State*, 254 Md. 146 (2017).[1] Mr. Clark contended that *Scott*—which involved a vacated sentence, not a vacated conviction—stands for the proposition that, when an appellate court vacates a sentence to which another sentence has been ordered to run consecutive, the non-vacated consecutive sentence remains consecutive to the newly imposed sentence. Mr. Clark posited that the Division's new policy ignored that his original judgments, not just the sentences, were invalidated and improperly treated his new dispositions—including the nolle prosequis— as modifications to original sentences, as though the convictions underlying sentences A, B, and C had remained intact.

---

[1] To support his position that the Division had adopted an informal policy change, Mr. Clark attached as an exhibit to his habeas petition a letter from the Division to another incarcerated individual explaining that "[t]he Division recently reconsidered its position in light of *Scott v. State*, 454 Md. 146 (2017)." The letter reflects that the individual's term was "recalculated" as a result of the Division's change in position.

In its answer, the Division disagreed with Mr. Clark that sentence D should have started to run immediately upon his convictions being vacated. The Division argued that, because Mr. Clark was subject to reprosecution or retrial on his invalidated sentences, his sentencing sequence was governed by CP § 6-218(c). The Division further contended that under *Scott*, Mr. Clark's sentences D and E remained consecutive "to the sentence imposed in Case No. -950C." The Division perceived no substantive difference between a court vacating a conviction and a court vacating a sentence and asserted that its calculation of Mr. Clark's term of confinement comports with *Scott*.

The habeas court held a hearing on September 4, 2024. On September 6, 2024, the court issued an order granting habeas relief and immediately releasing Mr. Clark from custody. The court ruled that CP § 6-218(d) applied, and that sentence D should have immediately dropped down to serve as the first sentence once the convictions in case numbers -869C, -950C, and -051C were vacated on October 20, 2023. The court ruled that under CP § 6-218(d), Mr. Clark should have immediately received credit against his valid sentences for all time spent in custody in connection with the invalidated sentences, and that the Division did not have "the right to toll" the application of the credit under these circumstances.

In a departure from Mr. Clark's position, however, the court determined that sentence D commenced on its original sentence imposition date, February 18, 2016, not the earlier date when sentence A commenced. The court also found that sentence E should have also commenced on its original sentence imposition date, October 20, 2022. Accordingly, the court ruled that the Division should have released Mr. Clark from its

9

commitment on October 21, 2023 and transferred his custody to the authority of the appropriate pretrial detention facility in Montgomery County.

The court also ruled that the Division erred in determining that sentences D and E "run consecutive" to the new sentence imposed on April 17, 2024. Mr. Clark was released from custody on September 6, 2024—the date that the habeas court issued its order granting habeas relief. The Division timely appealed to the Appellate Court of Maryland. We issued a writ of certiorari prior to the Appellate Court's consideration of this issue. 2025 WL 1580631, Pet. No. 29, Sept. Term, 2025 (Md. May 5, 2025).

## III

### Standard of Review

This Court reviews a circuit court's decision on a writ of habeas corpus "under the standard set forth in Maryland Rule 8-131(c)." *Sabisch v. Moyer*, 466 Md. 327, 349 (2019) (quoting *Wilson v. Simms*, 157 Md. App. 82, 91 (2004)). "We will review the case on both the law and the evidence, and we will not set aside the judgment on the evidence unless clearly erroneous." *Id.* "When the [circuit] court's decision involves an interpretation and application of Maryland statutory and case law, this Court must determine whether the trial court's conclusions are legally correct" under a "non-deferential" *de novo* review. *Id.* (quoting *Estate of Zimmerman v. Blatter*, 458 Md. 698, 717–18 (2018)).

## IV

### Discussion

The parties' contentions are the same before us as they were before the habeas court, except that the Division's position has varied a bit, which we will discuss below. Before

10

getting into their respective arguments, we lay out the sentencing credit statute enacted by the General Assembly.

CP § 6-218 is a comprehensive statute containing four subsections that address various contexts in which a defendant may receive credit against a valid conviction for time spent in custody. Subsection (b)(1) addresses those situations where a defendant is in custody before trial and is subsequently convicted on the charge for which he was held.[2] The time spent in custody prior to the imposition of a sentence must be credited against the sentence imposed. *Fleeger v. State*, 301 Md. 155, 160 (1984). Subsection (b)(2) addresses those situations where a defendant is in custody and a warrant or commitment is lodged against him.[3] If the original charge results in a dismissal or acquittal, and the defendant is convicted of the charge for which the warrant or commitment was lodged against him, the time spent in custody must be credited against the sentence imposed for the conviction.

---

[2] Section 6-218(b)(1) of the Criminal Procedure ("CP") Article of the Maryland Code (2018 Repl. Vol., 2024 Supp.) states:

> A defendant who is convicted and sentenced shall receive credit against and a reduction of the term of a definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in the custody of a correctional facility, hospital, facility for persons with mental disorders, or other unit because of:
>
> > (i) the charge for which the sentence is imposed; or
> > (ii) the conduct on which the charge is based.

[3] CP § 6-218(b)(2) states:

> If a defendant is in custody because of a charge that results in a dismissal or acquittal, the time that would have been credited if a sentence had been imposed shall be credited against any sentence that is based on a charge for which a warrant or commitment was filed during that custody.

11

*Fleeger*, 301 Md. at 162–63. In cases other than those described in (b)(2), the sentencing court has discretion to apply credit for time spent in custody for another crime.[4] CP § 6-218(b)(3).

The dispute between the parties in this case involves the application of CP § 6-218 (c) and (d), which state:

> (c) A defendant whose sentence is set aside because of a direct or collateral attack and who is reprosecuted or resentenced for the same crime or for another crime based on the same transaction shall receive credit against and a reduction of the term of a definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in custody under the prior sentence, including credit applied against the prior sentence in accordance with subsection (b) of this section.
>
> (d) A defendant who is serving multiple sentences, one of which is set aside as the result of a direct or collateral attack, shall receive credit against and a reduction of the remaining term of a definite or life sentence, or the remaining minimum and maximum terms of an indeterminate sentence, for all time spent in custody under the sentence set aside, including credit applied against the sentence set aside in accordance with subsection (b) of this section.

Subsection (c) addresses the situation where a defendant's sentence—with or without the accompanying conviction—is set aside on a direct or collateral attack, and the defendant is reprosecuted and resentenced for the same crime or another crime based upon the same transaction. The defendant is entitled to credit for time spent in custody under the sentence set aside against any new sentence based on the same offense.

---

[4] CP § 6-218(b)(3) states:

> In a case other than a case described in paragraph (2) of this subsection, the sentencing court may apply credit against a sentence for time spent in custody for another charge or crime.

Subsection (d) addresses the situation where a defendant is serving multiple sentences and one of them—with or without the accompanying conviction—is set aside as the result of a direct or collateral attack. In that instance, the defendant is entitled to credit for time spent in custody under the sentence set aside against any other sentences he is serving.

The General Assembly enacted the predecessor statute to CP § 6-218 "for the purpose of providing that under certain circumstances persons shall receive credit against their sentences for any time spent in custody[.]"[5] 1974 Md. Laws, Ch. 735. In *Fleeger*, we explained that one of the purposes of the predecessor statute was to eliminate "dead time"— "time spent in custody that will not be credited to any valid sentence." 301 Md. at 165.

As discussed, the Division's position changed somewhat during the pendency of this appeal. Before the habeas court and in its initial appellate brief, the Division argued that subsection (d) had no application to Mr. Clark's sentence because Mr. Clark was ultimately reprosecuted on some of the charges. According to the Division's initial interpretation, *only* subsection (c) applies where a defendant is serving multiple sentences and one of those sentences is set aside as a result of a direct attack, *and* he or she is reprosecuted or resentenced for the same crime. Although the Division changed its position on this point in its reply brief and at oral argument—in that the Division now

_____

[5] The predecessor statute was codified as Article 27, § 638C. 1974 Md. Laws, Ch. 735, § 1. In 2001, the General Assembly enacted CP § 6-218 without substantive change from Article 27, § 638C. 2001 Md. Laws, Ch. 10.

13

agrees that it should not have tolled the commencement of sentence D[6]—we nonetheless explain why the Division's interpretation was incorrect given that it is interrelated to the Division's second argument pertaining to sentencing sequencing.

This issue involves a matter of statutory interpretation. We employ our long-settled rules of statutory construction to guide our interpretation of these provisions. "[O]ur primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision[.]" *Kranz v. State*, 459 Md. 456, 474 (2018) (quoting *Evans v. State*, 420 Md. 391, 400 (2011)). "The starting point of any statutory analysis is the plain language of the statute, viewed in the context of the statutory scheme to which it belongs." *Id.* (citation modified). We presume that the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* (quoting *State v. Bey*, 452 Md. 255, 266 (2017)). We do so "by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or

---

[6] In its reply brief, the Division conceded that it should have commenced sentence D when Mr. Clark's convictions were vacated on October 20, 2023. However, the Division would have commenced sentence D from October 20, 2023, instead of from July 24, 2015—the date Mr. Clark started serving the vacated sentences arising from the vacated convictions. The Division's proposed calculation method results in a maximum expiration date of April 21, 2028, which the Division computes by adding the total term for sentences D and E (4.5 years and 1 day) to April 17, 2024, then subtracting the 180 days that Mr. Clark served between October 20, 2023 and April 17, 2024. After the application of diminution credits, the Division computes Mr. Clark's expected release date as March 24, 2026.

14

phrase is rendered surplusage, superfluous, meaningless or nugatory." *Evans*, 420 Md. at 400 (quoting *Ray v. State*, 410 Md. 384, 404 (2009)).

It is well settled that when a statute's language is "clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Kranz*, 459 Md. at 474 (quoting *Phillips v. State*, 451 Md. 180, 197 (2017)). If the language of a statute is ambiguous, then the court may "employ all the resources and tools of statutory construction" to ascertain its meaning, "including legislative history, prior case law, and statutory purpose." *Reier v. State Dep't Assessments & Tax'n*, 397 Md. 2, 26 (2007) (citation modified). If a statute is ambiguous, we may consider "the consequences resulting from one meaning rather than another and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Briggs v. State*, 413 Md. 265, 275 (2010) (citation modified).

### A. The Habeas Court Correctly Determined that CP § 6-218(d) Applied When Mr. Clark's Convictions Were Invalidated

We begin our statutory analysis with the text of subsection (d) because, in terms of timing, it applies *before* subsection (c). Specifically, subsection (d) applied on October 20, 2023—when some, but not all, of Mr. Clark's sentences were vacated. Subsection (c) did not apply to Mr. Clark's circumstances until almost six months later on April 17, 2024— when he pled guilty and received a new sentence.

Subsection (d) mandates that an individual serving multiple sentences be credited for all time spent in custody under a sentence "set aside as the result of a direct or collateral attack," i.e., an invalidated judgment. CP § 6-218(d). The word "shall" is ordinarily

15

construed as mandatory. *See In re Najasha B.*, 409 Md. 20, 32–33 (2009) (explaining that "in the absence of a contrary contextual indication, the use of the word 'shall' is presumed to have a mandatory meaning . . . and thus denotes an imperative obligation inconsistent with the exercise of discretion" (quoting *In re James S.*, 286 Md. 702, 709 (1980))). A criminal defendant is entitled to receive the sentence credit directed by subsection (d) when his or her conviction is vacated, and commencing on the date of the invalidated sentence. *See, e.g.*, *Butcher v. State*, 196 Md. App. 477, 490 (2010) (explaining that "when one [or more] of a series of consecutive sentences is nullified, the next valid sentence begins on the date set for the commencement of the invalidated sentence"); *see also Wilson v. Simms*, 157 Md. App. 82, 99 (2004) (holding that when B was vacated, C began when B was to begin).

Mr. Clark's circumstances fit squarely within the plain and unambiguous language of subsection (d). His convictions associated with sentences A, B, and C were vacated as of October 20, 2023. At that time, he was entitled to receive credit against the remaining valid sentences. There is no language in subsection (d) that can be interpreted as giving the Division the discretionary authority to toll the execution of the next valid sentence pending reprosecution or retrial.

Had the Division complied with the directive of CP § 6-218(d) when Mr. Clark's convictions were vacated on October 23, 2023, we agree with Mr. Clark that sentence D would have run from July 24, 2015 (the commencement date of the first invalidated

16

sentence),[7] followed by sentence E.  If the Division had executed the valid sentences in accordance with CP § 6-218(d), Mr. Clark's Division of Correction term of confinement would have expired at that point, and he would have been transferred to the custody of the local county detention center pending adjudication in case numbers -869C, -950C, and -051C.

Instead of applying CP § 6-218(d) when the convictions were vacated, the Division did two things.  *First*, it took the view that CP § 6-218(c) governs and that Mr. Clark became entitled to receive credit for time served on voided sentences A, B, and C *only after* his pending charges were adjudicated.  *Second*, it treated Mr. Clark's *new sentence* arising from a *new conviction* as if it were a modification to a sentence where the underlying conviction remained intact.  We disagree with the Division's interpretation of both the statute and our case law.

As noted above, Mr. Clark's circumstances fit squarely within the application of the plain and unambiguous language of subsection (d).  And subsections (d) and (c) work together.  Mr. Clark was entitled to receive credit for time served on invalidated sentences under subsection (d) at the time they were vacated, and commencing from the date of the first invalidated sentence.  If a reprosecution or retrial results in a new conviction, CP

---

[7] As noted above, the habeas court ruled that sentences D and E should have commenced on the dates of their original sentence imposition dates of February 18, 2016, and October 20, 2022, respectively.  We disagree and hold that sentence D should have commenced as of the first invalidated sentence, followed by sentence E.  *See, e.g.*, CP § 6-218(d) (providing that a covered individual "shall receive credit . . . for *all time spent in custody under the sentence set aside*" (emphasis added)); *Butcher v. State*, 196 Md. App. 477, 490 (2010); *Wilson v. Simms*, 157 Md. App. 82, 99 (2004).

§ 6-218(c) is applicable to the extent there is leftover credit remaining after the credit has been applied under subsection (d), as was the case here.

There is nothing in the language of subsection (d) that permits the Division to toll the next valid sentence to see if the State secures a new conviction under subsection (c). The Division's interpretation would require that we rewrite subsection (d) in a manner that is inconsistent with its plain language.

We further observe that the Division's interpretation would lead to an illogical result that is inconsistent with the statute's purpose. Once a conviction is vacated, it can take months or even years for a reprosecution or a retrial. It would be unfair to a criminal defendant to hold a credit for time served on a vacated conviction for a substantial period of time instead of immediately applying it to the next valid sentence. Moreover, the Division's interpretation does not account for the possibility that the reprosecution or retrial may ultimately result in a dismissal or acquittal and, therefore, the defendant may not receive the full credit for time served on an invalidated conviction. Here, for example, the State nolle prossed the charges in two of Mr. Clark's three cases. During oral argument, counsel for the Division acknowledged that, hypothetically, had the State nolle prossed all of the charges in April 2024, subsection (c) would have no application and only subsection (d) would have applied, so at that time, the Division would have given Mr. Clark credit "back to July 24, 2015." Where the remaining valid sentence is shorter in duration than the time served on an invalidated sentence, the "wait and see" approach leads to the real possibility that the defendant will not receive full credit for time served on the invalidated sentence if the retrial ends in a dismissal or acquittal. Such an application of subsection

18

(d) is inconsistent with the statutory purposes to ensure that, under the comprehensive sentence credit provisions of CP § 6-218, persons receive credit against their sentences for "*any* time spent in custody[,]" and to eliminate "dead time." *Fleeger*, 301 Md. at 165. Applying the credit awarded under CP § 6-218(d) to the next valid sentence at the time the conviction is vacated ensures that the total time in custody is "credited on a day-for-day basis against the total days imposed in the consecutive sentences." *Blankenship v. State*, 135 Md. App. 615, 623 (2000) (quoting *State v. Blondin*, 665 A.2d 587, 591 (Vt. 1995)).

Finally, the Division's decision to hold off on applying subsection (d) and only apply it if the reprosecution or retrial does not result in a new conviction is inconsistent with important principles undergirding our criminal justice system, including the clean slate rule, the presumption of innocence, and fundamental fairness.

When a criminal defendant's convictions are vacated, the defendant is legally placed back in the same position as one who is awaiting trial on those charges. *See Alston v. State*, 425 Md. 326, 342 (2012); *see also Cottman v. State*, 395 Md. 729, 743 (2006) (explaining that "the effect of granting a new trial is to leave the cause in the same condition as if no previous trial had been held" (citation modified)); *Hagez v. State*, 131 Md. App. 402, 423 (2000) (observing that when a criminal defendant obtains the reversal of a conviction, "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean" (quoting *North Carolina v. Pearce*, 395 U.S. 711, 721 (1969))). As the Appellate Court has explained, except for the filing of charges or an indictment, a retrial is "in every sense a new criminal proceeding." *Harrod v. State*, 192 Md. App. 85, 133 (2010) (citation

19

modified); *see also Marshall v. State*, 213 Md. App. 532, 550 (2013) (stating that "a grant of a new trial effectively wipes out the prior proceedings" (citation modified)).

The concept that a defendant's slate is wiped clean after obtaining reversal of a conviction, also known as the "clean slate" rule, is a cornerstone of criminal law and double jeopardy principles.[8] *Pearce*, 395 U.S. at 721. The State's ability to retry Mr. Clark after he successfully challenged his conviction rests on the notion that his slate had been wiped clean. *See, e.g.*, *Galloway v. State*, 371 Md. 379, 435–36 (2002) (Harrell, J., dissenting); *Harris v. State*, 312 Md. 225, 239 (1988); *Parks v. State*, 287 Md. 11, 16 (1980) (explaining that "a defendant who successfully challenges his conviction may be retried by a court of competent jurisdiction, the rationale being that the defendant wiped the slate clean and the parties may start anew"). Not only is the defendant's slate wiped clean, he or she is once again entitled to a presumption of innocence, which we have described as "among the bedrock characteristics that are indispensable to the integrity of every criminal trial." *Vigna v. State*, 470 Md. 418, 447 (2020) (citation modified). The Division's policy to hold off on granting a criminal defendant his or her time served credit on a vacated conviction

---

[8] The clean slate rule originated as a justification for the State's ability to retry a defendant who successfully overturned his or her conviction without offending the principle of double jeopardy that is contained in the Fifth Amendment to the United States Constitution and is enforceable against the States through the Fourteenth Amendment. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 719–21 (1969). Double jeopardy is also "rooted in the common law of this State[.]" *Parks v. State*, 287 Md. 11, 14 (1980). It protects a criminal defendant from "successive prosecutions" and "cumulative punishments" that would "subject him to embarrassment, expense and ordeal and compel him to live in a continuing state of anxiety and insecurity, as well as enhance the possibility that even though innocent he may be found guilty." *State v. Taylor*, 371 Md. 617, 630 (2002) (citation modified).

20

to see whether the State secures a new conviction is inconsistent with the clean slate rule and the defendant's presumption of innocence.

### B. The Habeas Court Correctly Determined that the Division Erred in Running Mr. Clark's Earlier Sentences D and E Consecutive to His New Sentence Arising From His New Conviction

We agree with the habeas court that the Division erred in determining that sentences D and E ran consecutive to the new sentence imposed in April 2024. The Division's characterization of this newly imposed sentence as "reimposed sentence B" reveals the problem with the Division's position. In terms of the sequencing order, Mr. Clark's new time served sentence should have been viewed as sentence "F"—the *last* sentence in the sequence—and not a "reimposed sentence B." An invalidated sentence arising from a *vacated conviction* is substantively different from an invalidated sentence where the underlying judgment remains intact.

While a resentencing mandate "does away with the entire initial sentence," *Parker v. State*, 193 Md. App. 469, 495 (2010) (citation modified), "it does not result in the entry of a wholly new judgment," *Webster v. State*, 359 Md. 465, 477 (2000). "Assessment of a new sentence resurrects the penalty portion of a judgement; it replaces the prior sentence." *Id*. There is a certainty that a sentencing mandate will lead to a new replacement judgment. *See Hughes v. State*, 243 Md. App. 187, 196 (2019) (explaining that "after a defendant has received a final judgment in the form of a conviction and sentencing, the State may not enter a nolle prosequi to alter the final judgment" (quoting *State v. Simms*, 456 Md. 551, 578 (2017))).

21

By contrast, as discussed above, when a conviction itself is invalidated, the judgment is completely erased. Indeed, the State's ability to retry a defendant after he or she successfully challenges his or her conviction, without offending principles of double jeopardy, rests on the notion that all of the remnants of the invalidated judgment are gone. Therefore, in the context of vacated convictions, when the initial conviction is vacated, the remaining series of consecutive sentences becomes "consecutive" to a sentence on a conviction that no longer exists. Those remaining sentences therefore drop down to replace the sentences on the vacated convictions, calculated as though the sentence for the first remaining conviction started on the date the sentence for the first vacated conviction began.

The Division's reliance on *Scott v. State*, 454 Md. 146 (2017), is misplaced. *Scott* addressed how the invalidation of one of multiple consecutive sentences affects a defendant's sentence sequence where the *sentence* is invalidated, but the underlying *conviction* remains intact. *Id.* at 187–200. There, a jury found the defendant guilty of attempted robbery with a dangerous weapon, use of a handgun in the commission of a crime of violence, and conspiracy to commit robbery with a dangerous weapon. *Id.* at 152. The circuit court imposed an enhanced sentence for the armed robbery conviction, ordered that the sentence for the handgun violation run consecutive to the sentence for attempted robbery, and ordered that the sentence for conspiracy run "consecutive to the other two sentences." *Id.* at 152–53. On appeal, the Appellate Court held there was insufficient evidence of the prerequisites for an enhanced sentence. *Id.* at 154. Accordingly, the court vacated the sentence for attempted robbery and remanded the case for resentencing on that conviction. *Id.*

22

On remand, the defendant asked the circuit court to make the new sentence for attempted robbery run concurrent with the sentences for the handgun violation and conspiracy. *Id.* at 195. The defendant argued that when the Appellate Court "vacated the sentence for attempted robbery with a dangerous weapon, the other two sentences became consecutive to a sentence that no longer existed." *Id.* at 198. The circuit court responded that it "lacked the discretion to do so," reimposed the original enhanced sentence for attempted robbery, and noted that the other sentences remained the same—i.e., consecutive to the reimposed enhanced sentence. *Id.* at 195.

On appeal, we held that the "the circuit court did not violate case law prohibiting the imposition of a sentence consecutively to a sentence that does not exist[,]" because the sentences for the handgun violation and conspiracy "were imposed consecutively to a sentence that existed at the time of their imposition." *Id.* at 198–99. We further held that, "where an appellate court vacates a sentence to which another sentence is ordered to be served consecutively and remands for resentencing without vacating the consecutive sentence, the non-vacated consecutive sentence remains consecutive to the newly imposed sentence[.]" *Id.* at 197.

*Scott* established that, when one of multiple consecutive sentences is vacated but the underlying conviction remains intact, that conviction acts as a placeholder in the sentence sequence for the new penalty that will be imposed at resentencing. When the new penalty is imposed, it occupies the spot in the sentence sequence held open for it by the original conviction. *Cf. Webster*, 359 Md. at 477 (noting that the modification of a sentence "does

not result in the entry of a wholly new judgment," but merely "resurrects the penalty portion of the judgment").

*Scott*'s reasoning does not extend to circumstances where one of multiple consecutive sentences *and* its underlying conviction is invalidated. As explained above, when a conviction is vacated, it is wholly nullified, and the defendant's slate is wiped clean. An invalidated sentence arising from an invalidated conviction represents a break in the sequence chain for consecutive sentences. Because the conviction itself is erased, there is no original shell or placeholder in the sentence sequence for a new sentence that may be imposed if the State obtains a second conviction after retrial. Such a sentence becomes a new link in the chain, taking last place in the sequence because it constitutes an entirely new sentence on an entirely new conviction. Thus, the non-vacated sentences left in the sequence cannot run consecutive to the sentence imposed after retrial, because the latter did not exist when the former was imposed.

The above-described sentencing sequence is consistent with the "batting order" principles that the Appellate Court articulated over 45 years ago. In *State v. White*, Judge Moylan, writing for the court, explained that "in a sentencing disagreement, as in baseball, there is a marked advantage to batting last." 41 Md. App. 514, 514 (1979) (citation modified), *abrogated in part on other grounds in DiPietrantonio v. State*, 61 Md. App. 528 (1985). In other words, when there is discord between how two sentences relate to one another, "[t]he answer is that the sentence sequence is controlling." *Id*. at 515. In *DiPietrantonio*, the Appellate Court went on to explain:

24

> The first judge to impose an actual sentence of confinement, the execution of which is unsuspended, creates a *status quo* to which a later sentencing judge must explicitly or implicitly relate. The later sentencing judge may be imposing a totally new sentence upon a totally new conviction or he [or she] may be reimposing an earlier suspended execution of a sentence. In either event, [the later sentencing judge] takes his [or her] place in the sequential batting order as of the moment he [or she] imposes (or reimposes) an actual sentence of incarceration to be executed.

61 Md. App. at 533–34. The Appellate Court's holding in *McRoy v. State* is also instructive. 54 Md. App. 516 (1983). In that case, the court held that, after a first-degree rape conviction was vacated, a sentence for a previously merged second-degree rape conviction may be imposed consecutive to life sentences that the defendant received "for unrelated convictions" and should be placed at the bottom of the batting order as a newly imposed sentence. *Id.* at 517. The court explained that, "as the life imprisonment sentence for the first degree rape conviction was no longer valid, the [twenty year] sentence for the second degree rape conviction stood last in the batting order behind the two other life sentences." *Id*. at 519 (citation modified). The court emphasized that the twenty year sentence "was not a replacement for the original life sentence imposed for the first degree rape conviction." *Id*.

Here, Mr. Clark's April 17, 2024 time served sentence was "a totally new sentence upon a totally new conviction," *see DiPietrantonio*, 61 Md. at 533, and not a replacement or superseding sentence, such as the sentence in *Scott*, 454 Md. 146 (2017). As a new sentence, it should have taken its place as sentence F in the batting order. *See White*, 41 Md. App. at 518. It represented a new link to be added to the end of the chain—not a replacement of a previously removed link. As a new judgment, it takes last place in the

25

chain behind the only other remaining links—sentences D and E, which by that time had already expired. Mr. Clark's new sentence could not retroactively fill the void left by his vacated convictions; rather, it must be treated as an entirely new judgment, taking its proper place at the end of the chain.

We further determine that the Division's decision to reorder sentence F by placing it *before* sentences D and E infringes on judicial power by restricting a sentencing court from relating the new conviction's sentence to any outstanding and unserved sentence in that term, if the new conviction was the result of a retrial. It is well-settled that a sentencing court is "vested with virtually boundless discretion" when imposing a sentence. *Jennings v. State*, 339 Md. 675, 683 (1995) (citation modified). A sentencing court has the power to impose whatever sentence it sees fit so long as it: (1) does not constitute cruel and unusual punishment or violate other constitutional requirements; (2) is not motivated by ill-will, prejudice, or other impermissible considerations; or (3) does not exceed statutory limitations. *Id.* at 683. "This judicial power includes the determination of whether a sentence will be consecutive or concurrent, with the same limitations." *Kaylor v. State*, 285 Md. 66, 70 (1979) (citation modified). The Division's interpretation, in which the Division has the authority to reorder the sentencing sequence so that sentence F—the last sentence in the batting order—is instead a "replacement sentence B" that is slotted into the place of an invalidated judgment and in front of a previously imposed consecutive sentence, has the effect of usurping the court's sentencing authority.

As the last sentencing judge in the batting order, the sentencing judge in case number -950C had the authority to determine what sentence to impose on April 17, 2024,

26

including whether to make it a time served sentence. The Division points out that, if CP § 6-218(d) applied on October 20, 2023, and sentence D was advanced to July 24, 2015, the effect of the sentencing court's imposition of the time served sentence is that Mr. Clark will have received double credit for the invalidated sentences arising from the vacated convictions. Mr. Clark responds that the "double credit" dilemma is of the Division's own making. We agree. If Mr. Clark had received credit for time served on his invalidated judgments against sentences D and E when his pleas were withdrawn in October 2023, as required by CP § 6-218(d), it would have been recognized that those sentences would have been fully served, soaking up four years, six months, and one day of credit for time served before the invalidation of the convictions related to sentences A, B, and C. Then, the fact that he still had more than four years of credit for time served remaining, and only remained in custody on the pending charges in the county detention center, could have been factored into his sentence negotiations or determination. However, because the Division did not execute sentence D when the convictions were invalidated with the commencement date of July 24, 2015—or at all, for that matter—Mr. Clark still had not received any credit for sentences A, B, and C when he entered his guilty plea in case number -950C on April 17, 2024.

If the Division properly applies CP § 6-218(d)'s mandatory language at the time of an invalidated conviction, it will not result in an excessive duplicate credit. To the contrary, a proper application of CP § 6-218(d) will promote the "one-for-one day method" for awarding time-served credits.

27

For the above reasons, we hold that under CP § 6-218(d), when Mr. Clark's convictions were vacated on October 20, 2023, his sentence D should have been calculated as having begun running as of July 24, 2015 (the date that sentence A commenced), followed by sentence E. Under CP § 6-218(c), since Mr. Clark's remaining sentences were shorter in duration than his time spent serving sentences A, B, and C, he would have been entitled to a partial time served credit against his new conviction on April 17, 2024.

Although the sentencing judge in -950C properly awarded time served credit under CP § 6-218(c), the record is unclear whether the sentencing court intended that credit to constitute a time served sentence.

To be sure, the sentencing judge's remarks appear to reflect that the court intended that Mr. Clark would be released from the Division's custody. The court asked Mr. Clark where he was going, and Mr. Clark replied "home." When the court asked where home was, Mr. Clark replied: "Silver Springs with my mother." Moreover, the judge signed Release from Commitment orders in connection with the three cases that were the subject of the previously invalidated convictions after the State nolle prossed the charges in two of the three cases. And defense counsel stated that the sentencing judge should make the sentences "concurrent to all other sentences."

However, sentences D and E were never mentioned by the parties or the court. And in awarding the "time served" sentence, the court referred to the time served credit as eight years, eight months, and 26 days, which is the entire time that had been served on sentences A, B, and C. But, since four years, six months, and one day of that time served credit should have been allocated to sentences D and E, a true "time served" sentence on

28

new sentence F would have been just over four years. The court also did not say that sentence F was to be concurrent with sentences D and E, which would not, in any event, have been possible, given that those sentences had already been fully served under a correct application of CP § 6-218(d). Given the many disconnects, we are uncertain what the intent of the sentencing judge was.

We therefore conclude that it is appropriate to vacate the judgment of the habeas court, and to remand this matter to the habeas court with instructions to vacate the sentence entered on April 17, 2024, and remand this matter to the sentencing court to enable the sentencing court to exercise its discretion with a full and complete understanding of the status of the valid sentences. *See Md. Corr. Inst. v. Lee*, 362 Md. 502, 518 (2001) (stating that a habeas court "need not choose simply between discharge of the defendant and the denial of all relief, but may 'tailor relief as justice may require'" (quoting *Gluckstern v. Sutton*, 319 Md. 634, 663 (1990))).

V

**Conclusion**

In conclusion, we hold as follows:

1.      When a criminal defendant's term of confinement consists of multiple sentences, and one or more convictions underlying those sentences is vacated, but at least one valid, active sentence remains, the defendant is entitled to receive credit for time served as required by CP § 6-218(d) when the conviction is vacated and commencing on the date of the first invalidated sentence. This interpretation of CP § 6-218(d) is consistent not only with its plain and unambiguous language, but also with the statute's purpose of eliminating

29

"dead time"—time spent in custody that will not be credited to any valid sentence. It also ensures a one-for-one method of awarding time served credits.

2.     Where CP § 6-218(d) has already been applied, and a criminal defendant is reprosecuted or retried after his or her conviction is vacated, and the proceeding results in a new conviction, CP § 6-218(c) applies to the extent that there is leftover credit remaining after credit has been given under CP § 6-218(d) for time spent in custody on the invalidated judgment(s) at the time those judgments were stricken.

3.     Where such a reprosecution or retrial results in a new conviction, the new sentence is in last place in a chain of consecutive sentences, and the sentencing judge who imposes the new sentence is in last place in the sentencing batting order. In that case, the sentencing judge may make the new sentence(s) consecutive or concurrent to any then-existing sentences.

4.     In this case, the sentencing record does not reflect whether the sentencing judge, in exercising his sentencing discretion, accounted for remaining valid consecutive sentences when he announced the time served sentence arising from the new conviction. Given the many disconnects in the record, we vacate the judgment of the habeas court, and remand this case to the habeas court with instructions to: (1) vacate the sentence entered on April 17, 2024; and (2) remand the petition to the Circuit Court for Montgomery County in case number 127950C for the sentencing court to exercise its discretion with a full and complete understanding of the status of the valid sentences.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; AND**

30

**IT IS FURTHER ORDERED THAT THE PETITION FOR HABEAS RELIEF IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE ENTERED ON APRIL 17, 2024, AND REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**